# Westchester Fire Insurance Company, Appellant, v. Herman Struck, Appellee.

## Gen. No. 6,280.

1. ACCOUNT STATED, § 15*—*when no presumption that omitted items not chargeable.* The rule that omission of items from repeated statements of accounts raises a presumption that such items are not properly chargeable does not apply where certain items are omitted under an express agreement of the parties.

2. CONTRACTS, § 285*—*what does not constitute an abandonment of a claim under contract.* Failure to demand or collect during a period short of that fixed by the statute of limitations does not amount to an abandonment of a claim under a contract.

3. INSURANCE, § 64*—*when failure to demand payment does not defeat recovery by agent on contract for extra commissions.* Failure of an insurance agent, for a number of years, to demand payment for extra commissions earned, where there was no evidence of an intent to abandon the claim, *held* not sufficient to defeat a recovery for commissions which became payable within the period limited by the statute of limitations.

4. INSURANCE, § 64*—*when action by insurance agent on contract for extra commissions not prematurely brought.* In an action by an insurance agent to recover extra commissions which, according to contract, were to be a certain percentage of the excess of premiums over losses during each year of the agent's employment, the action having been brought after the termination of such yearly periods, *held* that the possibility that there might be future losses on policies in force at the time of the institution of the action was immaterial.

5. CONTRACTS, § 349*—*when third person may maintain action on in his own name.* An insurance agent who had, under a trade name, contracted with an insurance company for commissions, *held* entitled to recover under the contract in his own name, he having at all times been the sole proprietor of the business, which fact was known to the company.

6. APPEAL AND ERROR, § 1494*—*when exclusion of evidence as to existence of partnership harmless error.* In an action, brought in his own name, by an insurance agent to recover commissions under a contract entered into by him under a trade name, *held* that the ruling out of evidence offered by the insurance company to show that the plaintiff was not the only one interested in the business

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

but that he was in partnership with another at the time of making the contract, was harmless error, if error at all, the evidence being so strong as to leave no doubt that he was the sole proprietor of the business and that the defendant company knew it.

7. INSURANCE, § 64*—*when instruction in action by agent for commissions under contract correct.* In an action by an insurance agent for commissions, under a contract calling for payments at yearly intervals, an instruction that such contract, if proven by a preponderance of the evidence, would, as a matter of law, be presumed to be in force until it was shown by the evidence that it had terminated, or that it was the intention of the parties to abandon or rescind it, *held* proper.

Appeal from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding. Heard in this court at the April term, 1916. Affirmed. Opinion filed August 10, 1916.

COVEY, CAMPBELL & COVEY and EVANS & EVANS, for appellant.

CLARENCE W. HEYL and HARRY C. HEYL, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

Herman Struck, the appellee, was agent of the Westchester Fire Insurance Company, the appellant, continuously at Pekin, Illinois, from 1894, and also at Peoria, Illinois, from 1900 until March, 1914, when appellant terminated his agencies. On and after November, 1913, he collected at said agencies $1,539.40 of appellant's money and refused to turn it over, claiming that appellant was indebted to him on a contract for extra commissions. This action of assumpsit was brought to recover that amount. Appellee pleaded a tender of $55.70, and a set-off of $1,488.97. Appellant replied a general denial to each plea and the Five-Year Statute of Limitations to the plea of set-off. On the trial the defendant was permitted to open

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

and close the case. The tender was proven without controversy. The claim for extra commissions was confined to a period of five years before the beginning of the suit. For that reason we assume no point is here made on the statute of limitations. The main contention is whether appellee is, on the merits, entitled to judgment on his plea of set-off. There was a verdict for the defendant and judgment on that verdict against the plaintiff for costs, from which this appeal is prosecuted.

During most, if not all, the time that appellee was so acting as agent there was in that district a union among certain insurance companies, including appellant. This union employed an inspector and maintained an inspection bureau whose business it was to see that such company obtained proper rates on all policies written, maintained the agreed scale of commissions to its agents, and observed other rules of the union. Agents' commissions were fixed on what was called the "graded scale" of fifteen, twenty, and twenty-five per cent. according to a classification of risks. Agents books were kept showing their business and monthly reports made through this inspection bureau. While appellee was acting as agent only in Pekin before his appointment at Peoria, appellant had some agreement with him, apparently in violation of union rules, to pay him an extra or bonus commission of ten per cent. on the net premiums after the deductions of losses paid for each year in addition to his graded commissions. After his appointment at Peoria it appears that in 1901 an authorized agent, now deceased, of appellant made a contract with him that he should continue to receive the same bonus or extra commission on his business at both offices so long as appellant's company remained in his office, and that the extra commission would be paid to him directly, and that he should keep no record of the matter on his

books and make his reports as though no such contract existed. The reason for this secrecy is obvious. Because of the death of the agent appellee did not testify to the contract, but it was proven by his bookkeeper, and letters of the agent were admitted in evidence, leaving no doubt that such contract was made. Appellee testified that it was never changed. The basis of computation was on the annual premiums received and annual losses paid. We need not enter into that in detail, because we do not understand appellant to deny that the amount claimed in the plea of set-off is correct if the contract was in force during the last five years of appellee's agency, except two objections that we will notice hereafter.

Payments were made to appellee covering extra commissions before July 1, 1901, but after that time until November 1, 1913, he made no claim on appellant for commissions above the graded scale. He made monthly reports of his business and settlements thereon during that period that showed business done, commissions charged and collected, and settlements made in accordance with the union agreement. The company sustained large and unusual losses in that district in the period from 1901 to 1909, which is said by appellee's counsel to account for no claim made during that time. The son of appellee was appointed State agent of appellant about August, 1909, and so acted until 1913, apparently with authority to adjust such matters. Appellee talked with him, as such agent, about this bonus commission and told him it ought to be paid, and his son told him that he knew about the deal in Peoria and Pekin; that he had read letters to him written by his predecessor, but asked him not to press the matter while he was acting as agent, or something to that effect. The son testified that he was told by an officer of appellant when he assumed his duties that he would find any number of those contracts

for extra commissions and he would have to treat them very carefully because it was something out of the ordinary.

Appellant devotes a large part of its brief to a citation of and quotations from authorities on the effect of accounts stated or settled and acquiesced in for a long time. It is true that ordinarily repeated statements of accounts omitting certain charges raise a strong presumption that such items are not proper charges for collection. Whether presumptions of law or fact, as a rule, arise from such a course of stating accounts and settlements thereon, we need not discuss, because we know of no law and can see no reason for applying such a rule to a case like this where the items were omitted under an express agreement that the account should be stated in that way. Appellant also insists that the failure to make any demand for payment for so long a time should be construed as an abandonment of the claim. There is certainly no rule of law that treats a failure to demand and collect as an abandonment of the claim, or that denies the claimant's right to collect in any period short of that fixed by the statute of limitations. It was said in *Evans v. Gerry,* 174 Ill. 595, 604: "Where an abandonment or waiver is relied upon, it must be shown to have been the clear intention of the parties to abandon the contract previously entered into. (*Mix v. White,* 36 Ill. 484.) Courts will indulge no presumptions in favor of a waiver of a contract where specific performance is attempted to be enforced, nor will it infer waiver or abandonment upon slight proof. (22 Am. & Eng. Encyc. of Law, 1062.)" This case was cited and its doctrine reaffirmed in *Turn Verein Eiche v. Kionka,* 255 Ill. 393, 398. We see no ground for holding that the contract was abandoned. The presumption is that the contractual relation continued to exist. (1 Corpus Juris, page 7.)

Appellant claims that there is no proof of the amount of loss on business of 1914; therefore no basis for computation for that year. Appellee did make sufficient proof as to losses of 1914 to make a prima facie case as to that item. If they were greater than he showed, it was in the power of appellant to show that fact. There is a suggestion by appellant that there might be future losses on policies in force at the time the suit was commenced, and therefore the net premiums could not then be computed, and the suit was prematurely brought. We may not understand appellant's position. As we understand the contract, settlements were to be made each year on the basis of receipts and losses of that year. In this view of the contract the data was before the jury if the receipts and losses in each year were sufficiently shown.

Appellee, Struck, at and sometime before the Peoria contract for extra commissions was made, was doing business under the name of Jas. A. Edds & Company. The agency was owned by appellee. No other person had any interest in it. It was not a corporation, or partnership. About five years before the present suit was begun he changed the name both at Peoria and Pekin to Herman Struck. There is no controversy about these facts, but appellant claims that if it made the Peoria contract for extra commissions, as charged, it was with Jas. A. Edds & Company, and as the amount charged and recovered for in the plea of set-off accrued in the agency of Herman Struck, he could not recover under the contract with Edds & Company. The evidence is not only clear, as above stated, that Edds & Company was simply a trade name used by appellee in which he did business and made his reports to the company for a term of years, but it is also we think clear beyond question that appellant knew that fact. Appellant's letters written to appellee in relation to this contract about the time it was made in 1901 were addressed to him personally; the contract

was made with him personally. There is an indication that the name of the agency was changed because of a rate war at Pekin. We do not think any significance should be attached to the fact of appellee's using this trade name. Objections were sustained to questions asked him and his bookkeeper in their cross-examination in relation to the use of that name which counsel stated were asked for the purpose of showing that the firm was composed of two men, and that at the time of the alleged agreement in 1901 the business in Pekin and Peoria was carried on in the firm name. If it was error to sustain such objections, it did no harm, as there was no question that the business was carried on at that time in the firm name, and the affirmative evidence that appellee was the only party interested, and that appellant knew it, is so strong as to leave no doubt about that matter.

Appellant argues that the court erred in instructions to the jury, and summarizes that contention by saying that there is no evidence in the record tending to show the agency was for any specific length of time. (In which, as we have before seen, it is mistaken.) It says the agency was subject to revocation at any time because there was no express agreement for a fixed time, and that the court refused to adopt its theory that the repeated statements of account by appellee and acquiescence in the same by the company constituted settlements from time to time, but instructed the jury, at the instance of appellee, that if he had shown by a preponderance of the evidence that the contract for extra commissions was entered into as claimed by him, then, as matter of law, the contract is presumed to be in force until it is shown by the evidence that it terminated, or that it was the intention of the parties to abandon or rescind it, and refused instructions offered by appellant to the effect that if the parties made settlements based on such reports and the course of dealing from July 1, 1901, to November 1, 1913, led

appellant and its officers to believe that appellee was writing insurance on such graded commissions, then it would be a fraud upon appellant for appellee to afterwards claim a greater commission than he had been making settlements for during the period covered by those statements, and he would be estopped from claiming any greater commissions than charged in his reports, and that the instructions of the court withdrew from the jury's consideration appellant's defense that the conduct of appellee in making settlements estopped him to claim the bonus commission. As we have before said, we do not think his conduct did so estop him as matter of law or matter of fact. He did not put his claim into his settlement statements because he had expressly agreed not to do so. The court could not instruct the jury as matter of law that the failure to demand payment of a valid claim short of the period of the statute of limitations should be considered as an abandonment of waiver of the claim, or as fraudulent on the part of the claimant. We do not think appellant's criticism of the instructions well grounded. For the reasons above stated the judgment is affirmed.

*Affirmed.*

NIEHAUS, P. J., took no part.