# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

VIVIAN L. PAGE, ADMINISTRATOR &C. V. SHENANDOAH LIFE
INSURANCE COMPANY
and
KATE W. CARMICHAEL V. SHENANDOAH LIFE INSURANCE
COMPANY.

January 13, 1947.

Record Nos. 3135, 3136.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and
Buchanan, JJ.

The opinion states the case.

*Vivian L. Page* and *Walter Aubrey Page*, for the plaintiffs in error.

*Woods, Rogers, Muse & Walker*, for the defendant in error.

Holt, C. J., delivered the opinion of the court.

There are two of these cases. Since the issues were the same in each, they were heard together, and the declaration in each instance was filed on February 12, 1944. It was in assumpsit in each case, and in each instance the defendant pleaded non-assumpsit.

On March 20, 1944, in each case it filed special plea No. 1, in which, by way of defense, it said that in addition to matters provable under the general issue, it relied upon the five-year statute of limitations.

On September 7, 1944, by leave of court it filed in each case special plea No. 2.

On the 13th day of August, 1919, the defendant issued to John Harlee Carmichael an insurance policy No. 5320, known as "ordinary life," for $3,000, payable to his "executors, administrators or assigns;" and on the 7th day of July, 1920, it issued to him another policy No. 7675, also an "ordinary life" policy, for $5,000, payable to Kate W. Carmichael, wife. The insured died on December 20, 1928.

The defendant in special plea No. 2, by way of defense to the $3,000 policy, said:

"The insured, John Harlee Carmichael, applied for and was granted an extension of time to December 13, 1923, to pay the premium due August 13, 1923, on policy number 5320. He executed on August 13, 1923, the usual extension note in the amount of $73.56 payable December 13, 1923, with interest. Said note provided in part as follows: 'This note is given for an extension of time within which to pay a premium due August 13th, 1923 on Policy No. 5320. If the same is not paid when due, then and in that event the policy shall be absolutely void, except as provided therein, without further notice, and the earned portion of the premium remaining unpaid, with the accrued interest thereon, shall immediately become due and payable and shall be a first lien upon any surrender values under the provisions of said policy.' Neither the said John Harlee Carmichael nor anyone else in his behalf ever paid the aforesaid extension note.

.As a result thereof said policy lapsed for nonpayment of premium when the premium note payable December 13, 1923, was not paid."

On the same day, September 7, 1944, by way of defense to the $5,000 policy, the defendant said:

"The insured, John Harlee Carmichael, applied for and was granted an .extension of time to September 7, 1923, to pay the premium due July 7, 1923, on policy number 7675. He executed on July 7, 1923, the usual extension note in the amount of $137.75 payable September 7, 1923, with interest. Said note provided in part as follows: 'This note is given for an extension of time within which to pay a premium due July 7th, 1923 on policy No. 7675. If the same is not paid when due, then and in that event the policy shall be absolutely void, except as provided therein, without further notice, and the earned portion of the premium remaining unpaid, with the accrued interest thereon, shall immediately become due and payable and shall be a first lien upon any surrender values under the provisions of said policy.' Neither the said John Harlee Carmichael nor anyone else in his behalf ever paid the aforesaid extension note. As a result thereof said policy lapsed for non-payment of premium when the premium note payable September 7, 1923, was not paid."

No replication was filed in either case to special plea No. 2, but in each there was filed a replication to special plea No. 1. In the replication to special plea No. 1, this is said:

" * * * the said John Harlee Carmichael at the time of his death on the 20th day of December, 1928, and for a long period of years prior thereto, to-wit, prior to the 17th day of May, 1923, the said John Harlee Carmichael had been physically and mentally incapacitated and had not advised the plaintiff nor his wife (now his widow), Kate Wilson Carmichael, of the existence of the policy sued upon and the said Kate Wilson Carmichael, the widow of the insured, who survived him and John Harlee Carmichael, Jr., Wilson Carmichael, and Donald Carmichael, all minors and the children of the said John Harlee Carmichael, deceased, who

would be the beneficiaries by virtue of the terms of the policy, knew nothing of the existence of the policy which is the basis of this action, or of its provisions with reference to furnishing proofs until to-wit: February 28th, 1940, neither did said widow nor the children of the deceased have any notice or knowledge that the insured had secured such policy on his life until the aforementioned date, when on a visit to the defendant company for the purpose of ascertaining whether the insured carried policies on his life, the said Kate Wilson Carmichael learned of the issuance of the policy for the first time. The said Kate Wilson Carmichael, widow of John Harlee Carmichael, had upon his death examined all of his papers in her home and possession and wherever he was likely to have any papers in order to ascertain what estate, if any, her husband left and what, if any, life insurance policies he carried, but without success; no paper whatsoever having been found indicating directly or remotely any insurance on the life of her husband."

It is also said that the widow exercised due diligence, that she knew nothing about these policies, and that suit was brought thereon promptly after their discovery. She charged that because of the matters set out in her replications, the statute of limitations was tolled until the discovery of the policies.

There is no evidence in the record except the policies themselves. The trial court in its final order in each case said:

"This action at law was heretofore submitted to the court for decision on the defendant's motion to strike the special replication of the plaintiff to the defendant's special plea No. 1 of the statute of limitations, and the court has maturely considered the arguments of counsel set forth in their respective briefs.

"The court is of the opinion that the applicable statute of limitations is five years, under section 5810 of the Virginia Code; that lack of knowledge as to the issuance of the policy did not toll the statute of limitations; that following the death of the insured, the interested parties had a

reasonable time within which to file proof of death; that the statute of limitations began to run after the expiration of a reasonable time following death, irrespective of whether the proof was filed or not; that the present action which was instituted more than fifteen years after the death of the insured was brought too late and is barred by the statute of limitations; that the matters set forth in defendant's special plea No. 1 of the statute of limitations constitute a complete defense to the maintenance of this action; that the plaintiff's special replication is insufficient in law; and that consequently the court should sustain the defendant's motion to strike said replication."

It was also of opinion that more than fifteen years having elapsed since the death of the insured, each policy was barred by the said statute of limitations.

Statutes of limitations are statutes of repose. *Sutton v. Burruss*, 9 Leigh (36 Va.) 381, 33 Am. Dec. 246. There the court said:

"It is well said by Judge Story, in *Bell* v. *Morrison*, 1 Pet. (26 U. S.) 351, 360, 7 L. Ed. 174, that the statute of limitations was 'intended to be, emphatically, a statute of repose. It is a wise and beneficial law, not designed merely to raise presumption of payment of a just debt from lapse of time, but to afford security against stale demands, after the true state of the transactions may have been forgotten, or be incapable of explanation, by reason of the death or removal of witnesses.' "

This principle we have stated and restated.

A late case dealing with that subject is *Street* v. *Consumers Mining Corp.*, 185 Va. 561, 39 S. E. (2d) 271.

*Chase Securities Corp.* v. *Donaldson*, 325 U. S. 304, 65 S. Ct. 1137, 89 L. Ed. 1628, is a case in which it was held that a state may lift the bar of the statute of limitations so as to restore a remedy lost through lapse of time and violates no provision of the Fourteenth Amendment. The court, in discussing the nature of these statutes of limitations, said:

"Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent ex-

pedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. *Order of Railroad Telegraphers* v. *Railway Exp. Agency*, 321 U. S. 342, 349, 64 S. Ct. 582, 88 L. Ed. 788, 792. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate."

These statutes operate on the remedy and do not extinguish the right. 34 Am. Jur. 20.

In *Campbell* v. *Haverhill*, 155 U. S. 610, 15 S. Ct. 217, 39 L. Ed. 280, it was said:

"The truth is that the statutes of limitations affect the remedy only and do not impair the right."

Applying this principle concretely to the instant case, this insurance company has promised to pay these policies and that promise still holds if they were in force at the date of the death of the insured. But that promise cannot be enforced either at law or in equity; the right still exists, but the remedy is lost.

When does the statute begin to run?

In *Campbell* v. *Whoriskey*, 170 Mass. 63, 48 N. E. 1070, the court said:

" * * * We are of opinion that the true principle is that the time when the demand must be made depends upon the construction to be put upon the contract in each case. If the contract requires a demand without language referring to the time when the demand is to be made, it is as if the words 'within a reasonable time' were found in it. What is a reasonable time is a question of law, to be determined with reference to the nature of the contract and the probable intention of the parties as indicated by it. Where there is nothing to indicate an expectation that a demand is to be made quickly, or that there is to be delay in making it, we

are of opinion that the time limited for bringing such an action after the cause of action accrues should ordinarily be treated as the time within which a demand must be made. See *Jameson* v. *Jameson,* 72 Mo. 640, and cases above cited. Such a rule seems fairly to apply the principles and analogies of the statute of limitations to the contract of the parties, and it is in accordance with the weight of authority in this commonwealth and elsewhere."

That rule we stated with approval in *Whitehurst* v. *Duffy,* 181 Va. 637, 26 S. E. (2d) 101.

In *Sanderson* v. *Postal Life Ins. Co.,* 87 F. (2d) 58, it appears that the insured died in December, 1916; that his policy issued April 16, 1898. There was paid thereon seventeen full annual premiums; that the insured failed to pay the annual premium due in April, 1915, and made no subsequent payment thereon. A son of the insured held the policy and through an attorney demanded payment which was refused. The son did not tell the plaintiff, who was decedent's administratrix, about the policy, and she did not know of it until May, 1932. She made demand for payment in August, following. The company promised payment upon receipt of satisfactory proof of death. The court called attention to the fact that the policy did not provide for payment upon the death of the insured with condition that proof of death shall be furnished.

In the instant case this is the promise made:

" * * * upon receipt of due proofs of the death, during the continuance of this policy, of John Harllee Carmichael."

The court there said:

"As the beneficiary has no right of action until proof of death is furnished, the cause of action does not accrue and the statute of limitations does not begin to run until the condition has been performed or until its performance has been excused in some way."

Undoubtedly this case supports the claims of petitioners. But we have adopted, as appears from *Whitehurst* v. *Duffy, supra,* the principle that demand must be made in a reasonable time.

In 7 Couch, Cyclopedia of Insurance, section 1634, p. 5721, it is said:

■ "If the policy requires notice and proofs of death, but specifies no time within which they must be furnished, and also contains no provision concerning when the loss is payable, the cause of action accrues after a reasonable time has elapsed for furnishing proofs of loss, and the limitation as to time of bringing suit, the policy containing one, will commence to run from the time when proofs are made, but, if not made, from the expiration of a reasonable time for furnishing the same."

And in Burks Pleading & Practice, 3rd Ed. 351, it is said:

"If a demand be necessary before action, the statute does not begin to run until the date of the demand, but demand must be made within a reasonable time, which is the time fixed by the statute of limitations, if not made before. Where no demand is shown it will be presumed to have been made within that period, and the statute will then run."

If the rule in the *Sanderson Case* be followed, there is no limit to the time within which suit may be brought. If we apply that rule in the instant case, these suits might have been brought not sixteen years after the death of Carmichael, but in thirty-two years thereafter. All that is necessary is that suit be brought promptly after the policies were discovered, however distant that discovery might be from the death of the insured.

In special replication to pleas No. 1, it is said that Carmichael from May, 1923, had been physically and mentally incapacitated and that beneficiaries under these policies knew nothing about their existence. Therefore, it is argued, for that reason the statute should be tolled. This is not Virginia law. See *Foster* v. *Rison*, 17 Gratt. (58 Va.) 321; *Bickle* v. *Chrisman*, 76 Va. 678; *Winston* v. *Gordon*, 115 Va. 899, 80 S. E. 756.

In 34 Am. Jur. 186, it is said:

■ "While, according to many courts, where the gist of an action is fraud concealed from plaintiff, or where there is fraudulent concealment of a cause of action, the statute

of limitations does not commence to run until discovery of the wrong or of facts placing one on inquiry, the general rule in actions at law is that the mere fact that a person entitled to an action has no knowledge of his right to sue, or of the facts out of which his right arises, does not prevent the running of the statute or postpone the commencement of the period of limitation until he discovers the facts or learns of his rights thereunder, for, though a person may not discover his injury until too late to take advantage of the appropriate remedy, yet this is said to be one of the occasional hardships necessarily incident to a law arbitrarily making legal remedies contingent on mere lapse of time."

Certainly there was no fraud or concealment here. These policies were not discovered until sixteen years after the death of the insured. It so happened, but nobody is to blame.

"If the insured in his lifetime failed to apprise the beneficiary of the existence and location of the policy and thereby prevented timely proof of death, he took the risk. See *Day* v. *United States*, 245 U. S. 159, 161, 38 S. Ct. 57, 62 L. Ed. 219; *Dermott* v. *Jones*, 2 Wall. (69 U. S.) 1, 8, 17 L. Ed. 762." *Maryland Cas. Co.* v. *Nellis*, 75 F. (2d) 23.

The trial court confines its findings to the statute of limitations. There is another phase of this case which may be noted in passing.

On the $3,000 policy, no premium of any sort was paid after February 13, 1926, and on the $5,000 policy, none after January 7, 1925. The insured died on December 20, 1928. He was physically and mentally incapacitated from the 17th of May, 1923. He made no payments on these policies after they had lapsed and no one made payments thereon because nobody knew about their existence.

For reasons stated, the judgments appealed from must be sustained, and it is so ordered.

*Affirmed.*