SOUTHERN MATERIALS COMPANY,
Incorporated, Plaintiff, Appellee,

v.

BRYAN ROCK AND SAND COMPANY,
and American-Marietta Company, Defendants and Third-Party Plaintiffs, et al., Appellants.

No. 8590.

United States Court of Appeals
Fourth Circuit.

Argued May 31, 1962.

Decided Sept. 12, 1962.

Stanley Worth, Washington, D. C. (Korner, Doyle, Worth & Crampton, Washington, D. C., Armistead J. Maupin, W. T. Joyner, Jr., and Joyner & Howison, Raleigh, N. C., on brief), for appellants.

William P. Oberndorfer, Norfolk, Va. (Charles L. Kaufman and Ira B. Hall, Norfolk, Va., on brief), for appellee.

Before SOPER and BRYAN, Circuit Judges, and BARKSDALE, District Judge.

SOPER, Circuit Judge.

This suit was brought for breach of contract for the sale of land and is based on the failure of the purchaser to whom the land had been conveyed to pay the purchase price in full. The question for decision is whether the purchaser was relieved of the obligation to make payment in full by one or more circumstances set up in defense. Obviously, if none of these defenses can be sustained the purchaser should respond in damages, as was held by the District Judge.

In 1957 Bryan Rock and Sand Company, a North Carolina corporation, was the owner of land in Prince George County, Virginia, on which it operated a plant for processing stone and gravel dug from the surrounding area. Southern Material Co., Inc., a Virginia corporation, owned some 20 acres of gravel land adjacent to the holdings of Bryan Rock. Southern Materials was then engaged in the construction of the Richmond-Petersburg Turnpike in the vicinity and needed gravel for this project. In this situation it served the purposes of both organizations to enter into a contract under which Bryan Rock bought the 20 acres of land from Southern Materials and agreed to pay for it in crushed gravel to be delivered to Southern Materials at Bryan Rock's plant.

The purchase agreement was in the form of a letter under date of August 1, 1957, in which Bryan Rock set out the terms of the agreement, as follows:

"This will confirm our agreement that in payment of the purchase price of Lots 13, 20 and 21, and one-half of Lots 14 and 22, as shown on the Riverdale Subdivision, Prince George County, Virginia, which you have conveyed to us by deed of even date herewith, the receipt of which deed is hereby acknowledged, we hereby agree to deliver to you and to load on your trucks, at our plant in Prince George County, Virginia, on land adjacent to that conveyed by said deed fifty thousand (50,000) tons of 1½ inch crushed gravel. Said deliveries shall be made by us to you at such rate as you may request, up to three hundred (300) tons per day (excluding such Saturdays, Sundays and legal holidays as our plant is not in operation), beginning as soon as you so request, and continuing until the entire fifty thousand (50,000) tons have been delivered to you."

It was the intention of the parties that the entire purchase price of the land be paid by the delivery of 50,000 tons of crushed gravel in accordance with the terms of the agreement and it was stipulated at the trial that at the time of contracting the gravel was worth $1.60 per ton, amounting to $80,000 in the aggregate. The contract called for delivery of the material on Southern Materials' trucks at Bryan Rock's plant in Prince George County, Virginia, situated on land adjacent to that conveyed by the deed, but it did not require that the material be taken from the land conveyed, and in fact some of the material delivered was dug from other lands of Bryan Rock. Deliveries, which commenced in

July, 1957, and continued to November, 1958, were made into the trucks of Southern Materials at the plant as and when requested by Southern Materials, without incident. However, in March, 1958, after some 28,000 tons of gravel had been delivered, Bryan Rock made the claim that the gravel in the property conveyed appeared to be substantially less than was represented, and the acreage less also, which relieved it of its obligation to deliver the full 50,000 tons provided by the contract. Nonetheless, Bryan Rock continued its deliveries of gravel on demand, and this position was subsequently abandoned and is not pressed on this appeal.

In all 32,017.70 tons of gravel were delivered between July, 1957 and November, 1958. In the latter month road building slows down on account of the weather. This had happened in the fall and winter months of 1957–1958. Moreover, Southern Materials' work on the Richmond-Petersburg Turnpike had been completed and it made no further demands for delivery since at that time it had no immediate need for the gravel in the area, and it was not economically feasible to accept the material and transport it for use elsewhere or store it for future use.

The contract specified no time within which the demand for material and delivery should be accomplished. The matter lay dormant from the fall of 1958 until June 1959 when as we shall see, Bryan Rock's obligation to perform the balance of the contract was raised by representatives of Southern Materials. In the meantime, the control of Bryan Rock had passed to other parties. On March 20, 1959 the Superior Stone Company, a North Carolina corporation, purchased all of the common stock of Bryan Rock and in connection with the transaction obtained an agreement of the owners of the stock to indemnify the purchaser against undisclosed claims of the company. Shortly thereafter on April 19, 1959, all of the assets of Superior Stone were purchased by American Marietta Company. In this transaction American Marietta assumed Bryan Rock's liabilities and acquired the right to the indemnity covered by the agreement given by the former stockholders of Bryan Rock to Superior Stone Company.

Thereafter American Marietta decided to liquidate the Bryan Rock Company and on July 30, 1959, in the course of the liquidation Southern Materials purchased substantially all of Bryan Rock's property in Virginia, including its rock-crushing plant and the adjacent land which Southern Materials had sold to it in 1957 under the contract in suit. Southern Materials' claim in the present case was not overlooked when the last mentioned transaction took place. On June 16, 1959 auditors, who were examining the books of Southern Materials, notified Bryan Rock that the books showed a balance of indebtedness in the sum of $28,781.68 owing to Southern Materials by Bryan Rock for the purchase of natural resource properties and asked for confirmation. Upon receipt of this letter Godfrey Cheshire of the Superior Stone Company, who had become president of Bryan Rock, communicated with D. T. Bailey, president of Bryan Rock when the contract in suit was signed, who took the position that Southern Materials had been more than paid for the property because the land contained 3 or 4 acres less than Southern Materials had represented. This contention, as we have seen, was subsequently abandoned and is not now before us.

In subsequent correspondence Southern Materials furnished the details of the contract in suit to American Marietta and demanded payment of the balance due and it was agreed that Southern Materials could have recourse against American Marietta for any claim it had against Bryan Rock. Negotiations between the parties for a settlement came to naught, American Marietta repudiated the claim and the present suit was instituted to recover the value of the undelivered gravel. At the trial on June 12, 1961 Southern Materials without objection amended its complaint and included a demand for the delivery of 17,982.3

tons of gravel in accordance with the agreement as an alternative to its demand for money damages. The Judge, sitting without a jury, found for the plaintiff in the sum of $28,771.68 with interest and costs but stated in his opinion that the defendant * might satisfy the plaintiff's claim by the delivery of 17,982.3 tons of gravel at Prince George County prior to the entry of final judgment.

On this appeal it is contended that the District Judge erred in finding a verdict for the plaintiff because:

(1) There was no actual breach of the contract by Bryan Rock in the absence of a demand by Southern Materials for the delivery of the gravel and a refusal of Bryan Rock to make delivery;

(2) Southern Materials abandoned its right to additional deliveries in order to save itself from loss;

(3) The reconveyance of the land to Southern Materials foreclosed any subsequent deliveries; and

(4) The court misapplied the law with respect to the measure of damages.

■■ In support of the contention that there was no breach of the contract by Bryan Rock the appellant relies entirely on the fact that Bryan Rock's obligation to make deliveries under the contract arose upon the demand of Southern Materials since the contract provided that delivery should be made at such rate as Southern Materials might request up to 300 tons per day beginning upon request and continuing until the entire 50,000 tons had been delivered. It is

pointed out that all of Southern Materials' requests during the period between July, 1957 and November, 1958, were duly honored and thereafter no requests for further deliveries were made since Southern Materials had no need for the gravel in the area and did not wish to incur the expenses of hiring trucks to haul material and the cost of storage. The answer to the contention is clear. The contract did not specify the time within which deliveries must be tendered and accepted. It merely provided that deliveries should be made at not more than 300 tons a day beginning as soon as requested and continuing until the entire tonnage had been delivered. It is not claimed that Southern Materials' cessation of demand for business reasons after November 1958, amounted to a breach of contract on its part. Nor is it contended that more than a reasonable time expired between November, 1958 and June, 1959 when Bryan Rock's additional obligations under the contract were brought to the attention of the owners of the company or that Bryan Rock suffered any loss during the interval. On the contrary the evidence plainly shows that both the old and the new owners of the company repudiated the claim and took the position that Bryan Rock was not under any obligation to make further deliveries. Cheshire, the new president of Bryan Rock, testified that if Southern Materials had demanded further deliveries under the contract in suit he would have refused until Bryan Rock's liability had been established. When the matter was first broached Bail-

* Southern Materials' action, instituted in a Virginia state court and removed to the District Court for the Eastern District of Virginia, Norfolk Division named as defendants Bryan Rock and American Marietta. The case was then transferred to the Eastern District of North Carolina at Elizabeth City on motion of the defendants who thereafter brought a third-party proceeding against the former stockholders of Bryan Rock on their indemnification agreement. The third-party defendants did not deny their liability as indemnitors, but asserted only that there was no liability on the part of Bryan

Rock under the original contract. Disagreeing, the District Court entered judgment against the defendants, and, on the third-party complaint, against the third-party defendants, and the defendants and third-party defendants appealed.

In their combined appeal the only issues they raise relate to the liability of Bryan Rock. Considering this identity of argument, and in view of the lack of dispute over the ultimate liability fixed by the judgment below, these parties, in their capacity as such, have been referred to simply as "the defendant" or as "the appellant".

ey, the first president, took the position that Bryan Rock had no obligation whatsoever under the contract because they had been deceived when they entered into the contract of sale and American Marietta, conceding that it was liable for any debt which Bryan Rock may owe, also denied liability after fruitless negotiations to settle had taken place. The attitude of the defendant is clearly shown by the position which it took when the suit was filed. In its answer it did not claim that there was no breach of the contract on its part because no demand for deliveries had been made. It took the ground that Bryan Rock had no obligation under the contract because it had been induced to buy the land by false representations on the part of Southern Materials that the land contained 330,000 tons of gravel, whereas in fact it only contained 175,000 tons, and that when this situation was discovered the parties to the contract agreed that it would not be rescinded but that the purchase price to be paid would be adjusted pro-rata in accordance with the amount of gravel actually found on the land after it had been completely dug. No evidence was offered to prove this claim, as we have seen, and it was completely abandoned. It follows that the District Judge correctly held that no demand on Southern Materials' part was necessary to give rise to the obligation on the part of Bryan Rock to complete deliveries under the contract. It is well settled that no demand for the performance of a contract is necessary to give rise to an obligation to perform when there has been a refusal in advance to comply with the terms of the agreement, 12 Am.Jur. Contracts § 331; 17 C.J.S. Contracts § 478; Restatement of Contracts, § 306.

■ The second contention of the appellant that Southern Materials voluntarily abandoned its claim to materials worth $28,771.68 and thereby released Bryan Rock from the obligation to deliver, is contrary to the uncontradicted evidence. In June 1959 Southern Materials asserted its claim and followed it up by suit when it could not obtain a settlement. There being no time for delivery specified in the contract, the rule of reasonable time governs—Page v. Shenandoah Life Ins. Co., 185 Va. 919, 40 S.E. 2d 922, 925—and in the absence of unreasonable delay, which is not asserted in this case, Southern Materials was under no obligation to make continuous demand for material that it did not then need. Bryan Rock suffered no injury through the suspension of deliveries. Far from abandoning its claim, Southern Materials expressly asserted it within a reasonable time and was rebuffed with a charge of misrepresentation. To say the least, the evidence certainly does not show a clear intention on its part to abandon valuable rights to which it was entitled and nothing less will support an abandonment or waiver. Fitzgerald v. Frankel, 109 Va. 603, 64 S.E. 941, 943; Westchester Fire Ins. Co. v. Struck, 200 Ill.App. 501, 505; McCargo v. Steele, D. C.Ark., 160 F.Supp. 7, 22, affd. 8 Cir., 260 F.2d 753.

■ The third contention is that Southern Materials lost its right to demand full payment of the purchase price of the land it sold to Bryan Rock on August 1, 1957 when it bought back the land on July 30, 1959, in the liquidation of Bryan Rock's properties in Virginia then under control of the American Marietta Company. In that transaction Southern Materials bought and paid for 15 tracts of land of the Bryan Rock Company, including the lands which it sold to Bryan Rock on August 1, 1957. The appellant's contention seems to rest entirely on the fact that in a letter of July 30, 1959, from Southern Materials to Bryan Rock confirming the agreement of sale and making certain arrangements in regard to the title and taxes on the land and other relevant matters, no mention was made of Southern Materials' claim that Bryan Rock had not completely fulfilled its obligation under the contract in suit. The appellant argues that since the properties were reconveyed to Southern Materials without any reference to its claim, it must be concluded that any conceivable liability under that contract

was extinguished. The appellant is able to make this argument only by omitting all reference to a letter of the same date from American Marietta to Southern Materials in which it is said that, in connection with the sale of the Bryan Rock properties that day to Southern Materials, the question of its claim against Bryan Rock in the approximate amount of $29,000 had arisen, and that Bryan Rock was in the process of liquidation under which American Marietta would undertake Bryan Rock's liabilities, and that the letter should be taken as an agreement by American Marietta that Southern Materials should have legal recourse against it on account of its claim against Bryan Rock. The omission of any reference to this letter by the appellant is a sufficient answer to its argument. It demonstrates that the parties to the sale of July 30, 1959 were cognizant of the transaction and were preserving it for future negotiation and settlement. It should be noted again that the contract of August 1, 1957, between Southern Materials and Bryan Rock did not require that the material be dug from the land thereby conveyed and that, in fact, a portion of the gravel delivered was dug from other lands of Bryan Rock.

 The law as to the measure of damages for breach of the contract to make payment for the land in gravel, which is the subject of the final argument of the appellant, seems to be correctly stated in 25 C.J.S. Damages § 79f, where it is said that when the contract is to pay specific property the measure of damages is the value of the property at the time of the breach. It was stipulated at the trial below that the value of 1½ inch crushed gravel on August 1, 1957 in the neighborhood of the plant was $1.60 per ton, and the evidence showed that there had not been much change in the price between August 1, 1957 and June 12, 1961, the day of the trial. It follows that there was substantial evidence to support the finding of damages by the District Judge in the amount of the stipulated value of $1.60 per ton. The appellant's contention is that Southern Materials suffered no loss because in order to accept delivery of the material it would have had to incur the expense of sending trucks to the plant as well as the expense of storing the material until it was needed. There was no evidence as to amount of these expenses and no reason to believe, as is contended, that the expense completely offset the value of the goods. In any event the argument is beside the point. Under the settled rule the plaintiff is entitled to the market value of the undelivered material and the defendant is not relieved of the obligation to deliver because of the possibility that the plaintiff might make improvident use of the material rather than sell it at the market price. The situation is not the same as that contemplated by the rule of law set forth in the Restatement of Contracts, § 335, to the general effect that if the defendant's breach saves expense to the plaintiff by discharging a duty on his part to perform, the amount of this saving is deducted from the recoverable damages. This rule applies, however, only when the plaintiff is obliged to perform some act in carrying out the contract between the parties such as building a house or furnishing services which he is unable to perform because of the defendant's breach. In such case the savings are deductible. In the pending case, the plaintiff had fully performed its obligation under the contract when it conveyed its realty to Bryan Rock, and that company, as we have seen, no longer contends that it received less than it had bargained for. True, Southern Materials was thereafter required to make demand in order to obligate Bryan Rock to deliver at its plant the gravel owed, but this condition of Bryan Rock's obligation was not itself a duty of performance such as is contemplated by § 335. As that section recognizes in comment a, when the plaintiff has already paid for the promised performance in full, the performance when rendered would increase his wealth by its full value to which he has a contract right. The contract in suit would have been completely performed if in

**420**

payment for the land conveyed Bryan Rock had supplied the full amount of the material. The use of the material thereafter by Southern Materials or the expense of obtaining it was no part of the contract between the parties and no concern of Bryan Rock.

The judgment of the District Court is affirmed.

Affirmed.