## CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
## AND JAMES CITY COUNTY

Ronald Dunn
and Verona Dunn

v.

City of Williamsburg
and B. Brockenbrough

January 31, 1995

Case No. (Law) 7123

BY JUDGE WILLIAM L. PERSON, JR.

This opinion is based upon facts pleaded and agreed upon between the parties.

Brockenbrough is a building inspector who works for the City of Williamsburg. On June 4, 1990, Brockenbrough issued a building permit for construction of a house to Hedgepeth, a builder. On June 14, 1991, Brockenbrough issued a Certificate of Use and Occupancy dated June 13, 1991, to Hedgepeth. The Plaintiffs, Ronald and Verona Dunn, subsequently purchased the house from Hedgepeth. According to their complaint, in or about March of 1993, the Dunns began to discover major structural defects in the house. On June 1, 1994, the Dunns filed a motion for judgment against Brockenbrough and Williamsburg.

The Dunns' original complaint alleges gross negligence (Count I) and constructive fraud (Count III) against Brockenbrough and constructive fraud against Williamsburg (Count II) resulting from Brockenbrough's inspection of the house and issuance of the Certificate of Occupancy. On October 13, 1994, the Dunns amended their motion for judgment to include two additional counts: a claim of simple negligence against Williamsburg and Brockenbrough based on the alleged negligent action being

a proprietary function (Count IV) and a claim of simple negligence against Williamsburg and Brockenbrough based on the Dunns' status as specifically identifiable persons to whom the Defendants owed a duty of care (Count V).

Both Defendants filed a Plea of Sovereign Immunity, a Plea of the Statute of Limitations, and a Demurrer, which also alleges that the Dunns' claims are barred by sovereign immunity and the statute of limitations, as well as alleging that the Dunns failed to state claims of fraud and negligence.

I find that Williamsburg is immune from suit for all counts based upon the doctrine of Sovereign Immunity. Counts I, IV, and V against Brockenbrough are barred by the statute of limitations. Because the Dunns' factual allegations are accepted as true for purposes of the Demurrer, Count III, a constructive fraud claim against Brockenbrough, survives the demurrer as it relates to the statute of limitations. However, for purposes of the Plea of the Statute of Limitations, I must hear further evidence to determine whether Count III was filed before the statute of limitations ran. If I determine that it was filed before the statute ran, then I must hear evidence to determine whether Brockenbrough is entitled to official immunity for Count III.

All issues raised by the Pleas of Immunity and by the Statute of Limitations are also raised in the Demurrer. Except where noted, my discussion of sovereign immunity and the statute of limitations as raised in the Demurrer is applicable to the Pleas of Immunity and the Statute of Limitations.

The Defendants' Demurrer may be upheld only if the Dunns' pleadings do "not state a cause of action or . . . [fail] to state facts upon which the relief demanded can be granted." Code of Virginia § 8.01-273. All "well-pleaded material facts" and "[a]ll reasonable factual inferences fairly and justly drawn from the facts alleged will be considered as true for purposes of the demurrer." However, "a demurrer does not admit the correctness of the pleader's conclusions of law." *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 373 (1988) (citation omitted).

## I. *City of Williamsburg*

"Sovereign immunity" refers to the absolute immunity from tort claims of the Commonwealth of Virginia and its counties and the immunity of Virginia's municipalities for certain acts. Sovereign immunity serves many purposes, including "protecting the public purse, providing for smooth

operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring all citizens will be willing to take public jobs . . . ." *Messina v. Burden*, 228 Va. 301, 307, 321 S.E.2d 657, 660 (1984).

The Commonwealth recognizes that municipalities perform both governmental and proprietary functions and thus immunizes them from tort only for their governmental functions because then a municipality is "considered an agency of the state . . . ." *Mullins v. Bryant*, 347 F. Supp. 1282 (W.D. Va. 1972). Governmental functions, as opposed to proprietary functions (which do not enjoy the same immunity from tort), are those undertaken to protect the general public's health and safety. *Transportation, Inc. v. Falls Church*, 219 Va. 1004, 254 S.E.2d 62 (1979). This municipal immunity is sometimes referred to as "governmental immunity."

Proprietary functions are undertaken primarily for the private benefit of the municipality. "[W]here governmental and proprietary functions coincide, the governmental function is the overriding factor." *Taylor v. Newport News*, 214 Va. 9 (1973).

The Dunns claim that the building inspections are proprietary functions, and therefore, the City is not immune from suit. Although the Virginia Supreme Court has not considered whether enforcement of the Statewide Building Code is governmental or proprietary, the Court has stated that "[t]he dominant purpose of the Building Code . . . is to provide comprehensive protection of the public health and safety . . . ." *VEPCO v. Savoy Construction Co.*, 224 Va. 36, 44, 294 S.E.2d 811, 817 (1982). This interpretation is consistent with the language of the Code. The Commonwealth's legislature has mandated that local building departments are responsible for enforcement of the Virginia Uniform Statewide Building Code (Code of Virginia § 36-98 et seq.) and are thus required to perform building inspections. Code of Virginia § 36-105. The legislature has also mandated that the purpose of the inspections is "to protect the health, safety, and welfare of the residents of this Commonwealth . . . ." Code of Virginia § 36-99. Additionally, one circuit court has concluded that a city and its employees, "in the administration and enforcement of the building codes . . ." perform, "or fail . . . to perform governmental functions." *Boyd v. Brown*, 12 Va. Cir. 54, 59 (1986).

Because the legislature has mandated that local building departments are responsible for enforcement of the Building Code and has mandated that the purpose of the inspections is to protect the public's health, safety, and welfare, Williamsburg is performing governmental functions when it

performs the building inspections. I thus sustain Williamsburg's Plea of Sovereign Immunity and Demurrer with regards to Sovereign Immunity and dismiss all claims against Williamsburg.

The Dunns make several other arguments that the City is not immune. The Dunns provided the Court with two exhibits, (1) Volume 1, "New Construction Code," of the 1987 Edition of the Uniform Statewide Building Code, and (2) the 1987 Amendments to the CABO One and Two Family Dwelling Code. The Dunns argue that the Uniform Statewide Building Code, in § 101.4, incorporates the entirety of the 1987 Amendments to the CABO One and Two Family Dwelling Code. Section R-102 of the CABO code states that its purpose is "to provide minimum standards for the protection of life, limb, health, property, environment and for the safety and welfare of the consumer, general public, and the owners and occupants of residential buildings regulated by this code." Through adoption of these amendments and the mandate of Code § 36-105 that cities promulgate the Building Code, the Dunns argue that the Virginia legislature has extended the duty owed by building inspectors beyond the general public and to "the owners and occupants of residential buildings regulated by this code."

Contrary to the Dunns' argument, Volume 1 of the "New Construction Code," in § 101.4 does not adopt and incorporate in its entirety the 1987 Amendments to the CABO Code. In fact, § 101.4 provides that "amendments noted in Addendum 2 of the USBC . . ." shall be made *to* the CABO Code. Section 101.4 does state that the CABO Code is a part of the USBC, but it does not follow that purposes delineated in the CABO Code, specifically Section R-102, are applicable to the entire Uniform Statewide Building Code.

The "purposes" delineated in CABO Code Section R-102 do not apply to the building inspections performed by Williamsburg and Brockenbrough. As discussed above and in reference to the Defendants' "Plea of Immunity," the inspections are a governmental function whose purpose is, as described in Code § 36-105, the safety and welfare of all citizens of the Commonwealth, not any specific citizen. The Dunns are not "Specifically Identified Persons." As discussed above, the inspections therefore are governmental, not proprietary functions, and the Defendants owe no duty to the Dunns apart from a general duty to the public.

Without referring the Court to any specific cases, the Dunns argue that a long line of "rather old cases" hold that payment of a fee makes a function proprietary, rather than governmental. Payment of a fee is not

determinative of whether a function is governmental or proprietary. The Virginia Supreme Court has characterized a proprietary fee as one for which those paying the fee receive a present, particularized benefit. *Tidewater Association of Homebuilders v. City of Virginia Beach*, 241 Va. 114, 121, 400 S.E.2d 523, 527 (1991). In *Tidewater*, the court held that payment of a fee for hookup of water utilities provided a present, particularized benefit. However, the court relied on its previous decisions holding that operation of such utilities is a proprietary function. *See, e.g., City of Richmond v. Warehouse Corp.*, 148 Va. 60, 138 S.E. 503 (1927) (water department operations are proprietary function). The court did not hold that payment of a fee was determinative of the governmental/proprietary distinction but adhered to Virginia law which looks to whether the action was undertaken to protect the general public's health, safety, and welfare, or to benefit a particular individual.

The Dunns' failure to allege whether the "specifically identifiable parties" language in Count V is meant to show that the issuance of the Certificate is proprietary, rather than governmental, or whether it has some other purpose leaves the court to assume it was meant to show that the issuance of the Certificate was proprietary because a duty to the Dunns, apart from any general duty to the public, arose from the issuance of the Certificate to Hedgepeth with the Dunns as third party beneficiaries. As discussed above, the issuance of the Certificate was a governmental function, not a proprietary one.

I also find that the claims contained in Counts IV and V against the City are barred by Statute of Limitations as discussed under "Brockenbrough."

## II. *Ben Brockenbrough*

The statute of limitations has run on all counts against Brockenbrough, except Count III (constructive fraud). I must hear further evidence to determine whether the statute of limitations has run on the constructive fraud claim against Brockenbrough. If the fraud claim was filed before the statute of limitations ran, than I must hear evidence as to whether Brockenbrough has official immunity from suit.

### A. *Statute of Limitations* (Counts I, IV and V)

Code of Virginia § 8.01-243(A) provides that actions for personal injuries must be brought within two years of when the cause of action accrues. Section 8.01-243(B) provides that injuries to property shall be brought within five years of when the cause of action accrues. The Dunns argue,

alternatively, (a) that their claims are for property damage, and (b) that two years have not elapsed since the cause of action accrued because defects in the house were not discovered until approximately fifteen months before they filed suit.

The building permit was issued on June 4, 1990. On June 14, 1991, Brockenbrough issued a Certificate of Use and Occupancy dated June 13, 1991, to Mr. Hedgepeth, the builder. Paragraph 79 of the motion for judgment alleges that the Dunns began to discover the major structural defects in the house in or about March of 1993. The Dunns filed suit on June 1, 1994, more than two years after Brockenbrough issued the Certificate but less than two years after the Dunns alleged they discovered the defects.

In order for the five year "property" statute of limitations to apply, there must be evidence of: (1) an injury against and directly affecting plaintiff's property; (2) plaintiff suing only for direct injury; and (3) the injury, to qualify as a direct injury, must be the first injury that results from the wrongful act. *Brown v. ABC*, 704 F.2d 1296 (4th Cir. 1983). For example, the fraud of a real estate agent, realtor, and contractor who induced buyers to purchase a piece of property they would not have bought absent the fraud is not an action for injury to property. *Pigott v. Moran*, 231 Va. 76, 341 S.E.2d 179 (1986). The fraud had no impact on the property itself because the land was left in the same condition as it was before the fraud. *Pigott*, at 81, 182.

In *Bader v. Central Fidelity Bank*, 245 Va. 286, 427 S.E.2d 184 (1993), the Virginia Supreme Court held that the tort of conversion involves an injury to property, not to a person, and thus is subject to the five-year statute of limitations. The court stated that conversion involves "any wrongful exercise . . . of authority . . . over another's goods." *Bader*, at 289, 186 (citation omitted). The court then distinguished conversion from fraud, which it noted is a "wrongful act . . . aimed at the person . . ." 245 Va. at 290 (citing *Pigott*) and therefore subject to the two-year statute of limitations.

Similar to the alleged fraud in *Pigott*, Brockenbrough's alleged acts left the building in the same condition as it was before the fraud. The Dunns also allege damage to their persons, not their property: they base their gross negligence claim on Brockenbrough's "affirmative representations" and their injuries sustained as third party beneficiaries of the inspections (*see* Complaint, paragraph 75) and base their fraud claims on affirmative representations made to them, which are dangerous "to public health, safety, and welfare . . . ." (Complaint, ¶ 77.) The Dunns' allegations are for

personal injuries, not for injuries to their property. The two-year statute of limitations therefore applies.

The statute of limitations began to run when the cause of action accrued. The Virginia Supreme Court has defined "accrual" as the time when any injury, however slight, is suffered as a result of the alleged wrongful acts. *Scarpa v. Melzig*, 237 Va. 509, 379 S.E.2d 307 (1989). The injury does not necessarily occur when the wrong is first discovered, and failure to discover the injury or the facts from which the injury occurred does not toll the running of the statute. *See Hawks v. DeHart*, 206 Va. 810, 146 S.E.2d 187 (1966); *Page v. Shenandoah Life Ins. Co.*, 185 Va. 919, 40 S.E.2d 922 (1947). The wrongful act itself is the basis for the action; the statute begins to run when the act first causes the injury, not when the injury is discovered or damage from the injury occurs or is first noticed. *See Caudill v. Wise Rambler, Inc.*, 210 Va. 11, 168 S.E.2d 257 (1969); *Richmond Redevelopment & Housing Authority v. Laburnum Construction Corp.*, 195 Va. 827, 80 S.E.2d 574 (1954).

Based on the Dunns' pleadings, the latest date the injury could have occurred is June 14, 1991, the day Brockenbrough issued a Certificate of Use and Occupancy. The statute of limitations thus began to run, at the latest, on June 14, 1991. The Dunns had two years from that date, until June 14, 1993, to file suit. The Dunns filed suit on June 1, 1994, more than two years after the cause of action accrued. The Dunns' claims of negligence and gross negligence against Brockenbrough (Counts I, IV, and V) therefore are barred by the statute of limitations.

## B. *Statute of Limitations* (Count III-Fraud)

Code of Virginia, § 8.01-243(A) provides that actions for personal injuries must be brought within two years of when the cause of action accrues. Code of Virginia, § 8.01-249, prescribes the date of accrual for fraud causes of action. Section 8.01-249 states that "actions for fraud or mistake" shall be deemed to accrue when they are "discovered or by the exercise of due diligence reasonably should have been discovered . . . ." The Dunns allege that they discovered the defects in their house "on or about March of 1993." For purposes of the Demurrer, the Dunns' allegation of when they discovered the defects is accepted as correct. For purposes of the Demurrer, the Dunns had two years from that date, until March of 1995, to file suit. They filed suit on June 1, 1994, and thus Count III against Brockenbrough survives the Demurrer as it relates to the statute of limitations.

However, for purposes of the Plea of Statute of Limitations, the Dunns' allegations are not accepted as true. The Dunns' claim for fraud against Brockenbrough (Count III) will be dismissed if the Dunns discovered, or by the exercise of due diligence should have discovered, the fraud prior to June 1, 1992 (two years before the date suit was filed). The determination of when the alleged fraud was or should have been discovered is a question of fact, and I defer ruling on whether the fraud claim should be dismissed pending presentation of evidence regarding the date the fraud was or reasonably should have been discovered.

## C. *Official Immunity*

If after hearing evidence regarding the statute of limitations I determine that Count III was filed before the statute of limitations ran, then I will have to hear further evidence to determine whether Brockenbrough has official immunity for his alleged fraudulent acts (Count III). Specifically, I will have to hear evidence regarding the applicability of the *Messina* test to Brockenbrough, specifically regarding the functions, actions, and procedures a building inspector is required to perform and those which Brockenbrough performed or failed to perform at the time of his alleged acts.

The Virginia Supreme Court has concluded that the doctrine of sovereign immunity must be extended to certain employees of the State and municipalities because Virginia "functions only through its . . . officials and employees . . . ." *James v. Jane*, 221 Va. 43, 52, 282 S.E.2d 864, 869 (1980). "Official immunity" from personal liability therefore is accorded to certain officers and employees of local public bodies.

A threshold question in determining whether an official is entitled to immunity is whether the official "works for an immune governmental entity." *Messina v. Burden*, 228 Va. 301, 312, 321 S.E.2d 657, 663 (1984); *see also Messina*, at 312, 664 ("in applying the *James* test, the first question is whether [the employee] works for an immune body"). If the official works for an immune entity, two further considerations determine whether the official is entitled to immunity. The first consideration is whether the claim against the official alleges gross negligence or intentional misconduct. If so, the official is not entitled to immunity from suit for the claim. If no gross negligence or intentional misconduct was alleged, I must then turn to the *Messina* test and examine its factors to determine whether the official is entitled to immunity.

Although the Virginia Supreme Court in *James* distinguished between employees of Virginia and employees of local government agencies, *James* at 51, 868, the Court later clarified that use of the word "state" in the *Messina* test does not mean that individuals seeking immunity who are not state, but rather local governmental employees, are not entitled to immunity. *Messina*, at 312, 663-64. Instead, the employee may gain the protection of official immunity if he worked for an immune governmental entity at the time of the challenged action. Brockenbrough worked for the City of Williamsburg. As discussed above, Williamsburg is entitled to immunity. Brockenbrough therefore worked for an immune governmental entity at the time of his alleged acts. He is entitled to immunity if the Dunns did not allege that he committed gross negligence or intentional misconduct, and if he meets the *Messina* standards.

Count I against Brockenbrough is a claim of gross negligence. He is not entitled to immunity for Count I, but it has been dismissed because it was filed after the statute of limitations ran. Counts IV and V, also dismissed because of the statute of limitations, do not allege gross negligence or intentional misconduct. Therefore, Counts IV and V would be dismissed if, after consideration of the *Messina* test, I determined that Brockenbrough is entitled to official immunity. However, because Counts IV and V were dismissed because the statute of limitations ran before they were filed, I do not need to consider them in light of the *Messina* test.

The only claim against Brockenbrough which may have been filed before the statute of limitations ran, Count III, is a fraud claim. Official immunity does not extend to acts of intentional misconduct. *Fox v. Deese*, 234 Va. 412, 362 S.E.2d 699 (1987). Fraud can be actual or constructive. Actual fraud involves intent to deceive; constructive fraud does not. Therefore, if Brockenbrough is entitled to official immunity, he is immune from suit for constructive fraud but is not immune from suit for intentional fraud. Count III is a constructive fraud claim against Brockenbrough. The Dunns' allegations that Brockenbrough "knew or should have known" that his representations were false and that his representations "at a minimum, rise to the level of constructive fraud" do not sufficiently allege intentional fraud. If, after consideration of the *Messina* factors, I determine that Brockenbrough is entitled to official immunity, then he is entitled to official immunity for Count III.

Governors, judges, legislators, "and other high level governmental officials" are generally accorded absolute immunity for all acts taken in the course of their employment. *Messina*, at 309, 661. The determination of

whether other employees are entitled to immunity is made through consideration of four factors laid out by the Virginia Supreme Court in *James v. Jane*, 221 Va. 43, 282 S.E.2d 864 (1980), and later cited in *Messina*. The following factors constitute the *Messina* test:

1. The nature of the function performed by the employee;

2. The extent of the state's interest and involvement in the function;

3. The degree of control and direction exercised by the state over the employee; and

4. Whether the act complained of involved the use of judgment and discretion.

*Messina* at 313, 663 (citation omitted).

The Dunns argue that Defendant Brockenbrough does not have official immunity for his building inspections because the inspections are merely ministerial. It is "well settled that public officers are liable for injury which is the result of their negligence in the performance of duties which do not involve judgment or discretion in their performance but which are purely ministerial." *Wynn v. Gandy*, 170 Va. 590, 595, 197 S.E.2d 527, 529 (1938).

I do not have sufficient evidence to determine whether Brockenbrough is entitled to official immunity, according to the *Messina* factors, for Count III. If after hearing evidence regarding the statute of limitations I decide that Count III was filed before the statute of limitations ran, then I will have to turn to the *Messina* test, examine its factors, and hear further evidence regarding whether Brockenbrough is entitled to official immunity.

The Defendants' third ground for Demurrer is that the Dunns' negligence claims fail to allege any duty to the Dunns. The court will not consider this ground for Demurrer because all negligence claims have been dismissed based upon the statute of limitations and sovereign immunity.

The Defendants' final ground for Demurrer is that the Dunns' claims of fraud (Counts II and III) fail to state a claim for relief on fraud grounds. Count II has been dismissed because of Williamsburg's immunity from suit. Apart from previously discussed issues concerning immunity and the statute of limitations, Count III alleges sufficient facts upon which relief for constructive fraud may be granted. This claim therefore survives Defendants' fourth ground for Demurrer.