POTOMAC HOSPITAL CORPORATION

V.

JOSEPHINE A. DILLON, COMMITTEE OF HILDA NADINE
AMIDON

Record No. 840438

Decided April 26, 1985, at Richmond

Present: All the Justices

356

Randolph W. Church, Jr. (Stephen M. Sayers; Gerald R. Walsh; Hunton & Williams; Miles & Stockbridge, on briefs), for appellant.
Frank J. Ceresi (Thomas J. Harrigan; Thomas J. Morris, on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

In 1982, the General Assembly amended Code § 8.01-35.1[1] (the covenant-not-to-sue statute) by adding subsection D which provides that the statute "shall apply to all . . . covenants not to

---

[1] Code § 8.01-35.1 presently provides:
**Effect of release or covenant not to sue in respect to liability and contribution.**—A. When a release or a covenant not to sue is given in good faith to one of two or more persons liable in tort for the same injury, or the same property damage or the same wrongful death:

1. It shall not discharge any of the other tort-feasors from liability for the injury, property damage or wrongful death unless its terms so provide; but any amount recovered against the other tort-feasors or any one of them shall be reduced by any amount stipulated by the covenant or the release, or in the amount of the consideration paid for it, whichever is the greater. A release or covenant not to sue given pursuant to this section shall not be admitted into evidence in the trial of the matter but shall be considered by the court in determining the amount for which judgment shall be entered; and

2. It shall discharge the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

B. A tort-feasor who enters into a release or covenant not to sue with a claimant is not entitled to recover by way of contribution from another tort-feasor whose liability for the injury, property damage or wrongful death is not extinguished by the release or covenant not to sue, nor in respect to any amount paid by the tort-feasor which is in excess of what was reasonable.

C. A release or covenant not to sue given pursuant to this section shall be subject to the provisions of §§ 8.01-55 and 8.01-424.

sue executed on or after July 1, 1979, and to all releases executed on or after July 1, 1980, regardless of the date the causes of action affected thereby accrued." Acts 1982, c. 196. The principal question in this appeal is whether this provision violates constitutional due process when retroactive application of the statute adversely affects a joint tort-feasor's substantive right of contribution.

This is a medical malpractice case arising out of a surgical operation performed on Hilda Amidon at Potomac Hospital Corporation on September 16, 1977. During the operation, Amidon suffered a cardiac arrest and sustained severe, permanent brain damage.

In January 1980, Amidon's committee, Josephine Dillon, sued the hospital and three physicians, jointly and severally. On July 14, 1983, Dillon agreed to settle her claims against the physicians for $475,000. Pursuant to Code § 8.01-35.1, she executed a covenant not to sue, thereby releasing the physicians and purporting to reserve her claims against the hospital.

Before trial, the hospital moved for summary judgment on the ground that release of one joint tort-feasor releases all others. The hospital contended that because the cause of action accrued before the statute's effective date, application of Code § 8.01-35.1 to the cause of action unconstitutionally destroyed its right of contribution from the released tort-feasors.

The trial court reserved its ruling on the motion and a jury trial to determine liability and damages ensued. The hospital unsuccessfully moved to strike the evidence and enter summary judgment at the conclusion of Dillon's evidence and again after all the evidence was presented. The jury returned a $1,200,000 verdict for Dillon.

The trial court refused to set aside the verdict, but it did grant a $475,000 credit to the hospital for the amount the physicians had paid. The court entered judgment for $725,000 against the hospital. In rejecting the hospital's argument respecting the retroactive application of Code § 8.01-35.1, the court opined that the hospital's right to contribution was inchoate, not vested, and that "inchoate rights are subject to alteration or destruction by legislative enactment at any time prior to their vesting."

D. This section shall apply to all such covenants not to sue executed on or after July 1, 1979, and to all releases executed on or after July 1, 1980, regardless of the date the causes of action affected thereby accrued.

As a threshold issue, Dillon contends that the hospital is estopped from challenging the constitutionality of Code § 8.01-35.1 because it benefited from the statute by receiving the $475,000 credit against the verdict. She relies upon *Bisping and Exum* v. *Commonwealth*, 218 Va. 753, 240 S.E.2d 656 (1978), *cert. denied*, 435 U.S. 1007 (1978), and *Spindel* v. *Jamison*, 199 Va. 954, 103 S.E.2d 205 (1958). Her reliance is misplaced.

In *Bisping*, the defendant voluntarily availed himself of the advantages of the recognizance statute and later claimed the statute was unconstitutional. We held that "one who voluntarily proceeds under a statute and claims benefits thereby conferred will not be heard to question its constitutionality in order to avoid its burdens." *Bisping*, 218 Va. at 755, 240 S.E.2d at 657.

Similarly, in *Spindel*, the plaintiff's application for a professional engineer's license pursuant to a specific statute was denied, and thereafter he attacked the statute's constitutionality. We said that "[n]o litigant will be heard to deny the validity of a statute under which he has chosen to proceed." *Spindel*, 199 Va. at 960, 103 S.E.2d at 210.

■ Here, however, the hospital did not request the application of Code § 8.01-35.1. To the contrary, it vigorously challenged its application throughout the trial. After the court had rejected the hospital's contention and applied the statute, the credit provision of the statute automatically came into play. Consequently, we reject this contention.

■ Next, we address the constitutional question. The hospital contends, as it did at trial, that subsection D is unconstitutional. Relying primarily upon *Shiflet* v. *Eller*, 228 Va. 115, 319 S.E.2d 750 (1984), decided after the trial court ruled in the present case, it argues that the right of contribution by one joint tort-feasor from another is a "substantive" right which is "constitutionally protected against retroactive statutory abridgment."

On the other hand, Dillon asserts that Code § 8.01-35.1 can be retroactively applied in the instant case. She argues that a cause of action for contribution between joint tort-feasors is inchoate and contingent and that "[i]t ripens into a right to sue to recover only after one tortfeasor [sic] has paid a disproportionate share of damages arising out of a common obligation." She further asserts that Code § 8.01-35.1 merely altered the method of recovering contribution; it did not destroy the right of contribution.

Dillon acknowledges that the statute did not apply to causes of action arising before the date of its enactment because the General Assembly, in Code § 8.01-1,[2] expressly prohibited such application. She asserts, however, that by enacting subsection D of Code § 8.01-35.1, the General Assembly specifically expressed its intention to allow the statute's application "regardless of the date the causes of action affected thereby accrued," thereby abrogating Code § 8.01-1. Dillon further asserts that the right of contribution, though substantive, is neither a vested nor a contractual right; thus, it can be altered retroactively without constitutional prohibition.

We conclude that *Shiflet* controls. In *Shiflet*, as here, the tort occurred in 1977, before the enactment of Code § 8.01-35.1, which took effect July 1, 1979. In a document executed in 1981, pursuant to Code § 8.01-35.1, the Shiflets released one joint tort-feasor but purported to reserve all claims against Eller, the other joint tort-feasor. When the Shiflets sued Eller, the trial court sustained Eller's plea of release, and we affirmed.

In *Shiflet*, we held that both "substantive" rights and "vested" rights "are included within those interests protected from retroactive application of statutes." 228 Va. at 120, 319 S.E.2d at 753. We further held that Eller's cause of action for contribution, which arose at the time of the tort,[3] "is a substantive right manifested by the ability of one tort-feasor to seek contribution from another wrongdoer jointly liable and by the ability of a joint wrongdoer to defend successfully a suit by the plaintiff after the plaintiff has released another joint tort-feasor." *Id.* at 121, 319 S.E.2d at 754.

---

[2] Code § 8.01-1 reads as follows:

**How proceedings may be in actions pending when title takes effect.** — Except as may be otherwise provided in § 8.01-256 of Chapter 4 (§ 8.01-228 et seq.) (Limitations of Actions), all provisions of this title shall apply to causes of action which arose prior to the effective date of any such provisions; provided, however, that the applicable law in effect on the day before the effective date of the particular provisions shall apply if in the opinion of the court any particular provision (i) may materially change the substantive rights of a party (as distinguished from the procedural aspects of the remedy) or (ii) may cause the miscarriage of justice.

[3] In *Shiflet*, we distinguished between a· "cause of action" and a "right of action." The former "arises at the time of the jointly negligent acts" while the latter arises only when one joint tort-feasor has paid a claim for which other joint tort-feasors are also liable. *Id.* at 120-21, 319 S.E.2d at 754.

Finally, in *Shiflet* we said what is most significant to the present case:

> Because the cause of action for contribution accruing to Eller, a joint tort-feasor, arose at the time of the jointly negligent acts . . ., it necessarily follows that the 1979 statute in question, which adversely affects that substantive right, cannot be applied retroactively to impair that right . . . . Such a retroactive application of the enactment *would violate Eller's due process rights and would be invalid.*

*Id.* at 121, 319 S.E.2d at 754 (emphasis added) (citations omitted). Thus, *Shiflet* holds that because the retroactive application of Code § 8.01-35.1 adversely affects the "substantive" right of contribution, such an application would violate a joint tort-feasor's due process rights. Additionally, such retroactive application of the statute eliminates the long-standing common-law defense that the release of one joint tort-feasor releases all.

Dillon seeks to distinguish the present case from *Shiflet*, noting that the release in *Shiflet* predated the enactment of subsection D of Code § 8.01-35.1, while in the present case, Dillon's covenant not to sue was executed after the enactment of subsection D. She asserts that *Shiflet* was controlled by Code § 8.01-1, but that subsection D abrogated Code § 8.01-1, thereby removing the prohibition against the statute's retroactive application. Dillon, however, ignores the language in *Shiflet* which clearly states that the retroactive application of a statute impairing a "substantive" right violates due process and is therefore unconstitutional. *Id.; see also Sargent Electric Co. v. Woodall*, 228 Va. 419, 425, 323 S.E.2d 102, 105 (1984).

Finally, Dillon contends that we should repeal the rule which provides that the release of one joint tort-feasor releases all. While acknowledging that this was the law in the Commonwealth before Code § 8.01-35.1, she asserts, nonetheless, that repeal is warranted because the rule is unjust and inequitable. We also reject this contention.

In *Wright v. Orlowski*, 218 Va. 115, 122-23, 235 S.E.2d 349, 354 (1977), we said: "Unfortunately, the rule sometimes works harsh results. Yet, the rule is one of ancient origin, honored without exception in this Commonwealth, and fully familiar to bench and bar. Both counsel and courts must be governed by it." Be-

cause this rule was established law at the time of the alleged malpractice when the rights and obligations of the parties were determined, *Shiflet*, 228 Va. at 123, 319 S.E.2d at 755; *Norfolk & Sou. R. Co. v. Beskin*, 140 Va. 744, 747, 125 S.E. 678, 679 (1924), it would be improper for us to retroactively repeal the rule under the guise of promoting equity. Unless litigants can rely upon established rules, there will be no stability in the law.

Thus, we hold that Code § 8.01-35.1 cannot be applied retroactively to adversely affect the hospital's right of contribution, and, therefore, pursuant to the established law at the time the cause of action accrued, the trial court erred in denying the hospital's motion for summary judgment. *See Wright* v. *Orlowski*, 218 Va. 115, 235 S.E.2d 349 (1977). Accordingly, we will reverse the judgment of the trial court and enter final judgment for the hospital.

*Reversed and final judgment.*

RUSSELL, J., dissenting.

I think the hospital is estopped from challenging the constitutionality of Code § 8.01-35.1. As the majority opinion points out, one who claims and accepts the benefits conferred by a statute "will not be heard to question its constitutionality in order to avoid its burdens." *Bisping and Exum* v. *Commonwealth*, 218 Va. 753, 755, 240 S.E.2d 656, 657, *cert. denied*, 435 U.S. 1007 (1978); *Spindel* v. *Jamison*, 199 Va. 954, 960, 103 S.E.2d 205, 210 (1958). That is precisely the situation in which the hospital placed itself.

The majority opinion states that after the trial court had rejected the hospital's claim of unconstitutionality, the hospital did not invoke the benefits of the statute, so as to become estopped, because "the credit provision of the statute automatically came into play." I do not so interpret the record.

The hospital filed a post-trial motion, supported by a memorandum of law, moving the court (1) to reduce the $1,200,000.00 verdict to $750,000.00 pursuant to the statutory "cap" on malpractice awards provided by Code § 8.01-581.15, and (2) further to reduce the remaining $750,000.00 by $475,000.00 "pursuant to Va. Code § 8.01-35.1 (1983 Cum. Supp.)." In oral argument on the motion, counsel for the hospital said:

Your Honor, you have a verdict of a million, two, which should be reduced to $750,000, because that's what the statute says is recoverable. And [8.01-] 35.1 says that you should, from that amount that is to be recovered under [8.01-1] 581.15, deduct $475,000, and leave the amount to be recovered $275,000, which means that the full effect of the statute is given . . . .

The court refused to apply the statutory "cap," but did apply Code § 8.01-35.1, the very statute the hospital attacks as unconstitutional, by granting the hospital's motion to the extent of crediting the $1,200,000 verdict with the $475,000 settlement the plaintiff had made with the physicians.

The hospital, therefore, specifically asked for and received the benefits conferred upon it by Code § 8.01-35.1 and, in my view, is estopped from any challenge to its constitutionality.