# SCHOOL BOARD OF THE CITY OF NORFOLK, ET AL.

## V.

# UNITED STATES GYPSUM COMPANY, ET AL.

Record No. 870265

September 4, 1987

Present: All the Justices

*Keith D. Boyette (Charles F. Witthoefft; John C. Ivins, Jr.; Shepard M. Remis; Marjorie S. Cooke; James C. Roberts; Bradfute W. Davenport, Jr.; Russell V. Palmore, Jr.; George B. Wickham; Richard P. Brown, Jr.; Thomas W. Murrell, III; Thomas B. Kenworthy; Daniel A. Carrell; Denise A. Daggett; Gregory N. Stillman; Lawrence T. Hoyle, Jr.; Eleanor I. Druckman; Hirschler, Fleischer, Weinberg, Cox & Allen; Goodwin, Proctor & Hoar; Mays & Valentine; Morgan, Lewis & Bockius; Hunton & Williams; Hoyle, Morris & Kerr, on briefs), for defendants.*

*Thomas J. Michie, Jr. (Gary W. Kendall; James P. Cox, III; Michie, Hamlett, Donato & Lowry, on brief), for plaintiffs.*

*Amicus Curiae: Commonwealth of Virginia, William H. Hauser, Senior Assistant Attorney General (Mary Sue Terry, Attorney General; Stephen D. Rosenthal, Deputy Attorney General; Calvin F. Tiller, Assistant Attorney General; Fred R. Kozak, Assistant Attorney General, on brief), for plaintiffs.*

*Amicus Curiae: Virginia School Boards Association (D. Patrick Lacy, Jr.; John A. Gibney, Jr.; Lacy & Mehfoud, P.C., on brief), for plaintiffs.*

POFF, J., delivered the opinion of the Court.

Pursuant to Acts 1985, c. 620, and Acts 1986, cc. 250, 646, the people of this Commonwealth, at the general election held November 4, 1986, ratified an amendment to Va. Const. art. VI, § 1, which vested this Court with original jurisdiction "to answer questions of state law certified by a court of the United States or the highest appellate court of any other state." By order entered January 16, 1987, we amended the Rules of this Court by adding Rule 5:42 which is appended to the foot of this opinion.

As contemplated by Rule 5:42(a) and (e), we entered an order March 18, 1987, accepting for consideration a question of law certified to us by orders entered in the above-captioned case by the United States District Court for the Eastern District of Virginia, Norfolk Division. The certification orders fully comply with the requirements of Rule 5:42(c) and (d), and we look to those orders for the facts and circumstances underlying the question certified.

As stated in the certification orders, the City of Norfolk and the School Board of the City of Norfolk (the plaintiffs) filed a civil complaint on June 27, 1986, seeking "compensatory and punitive

damages allegedly sustained in inspecting, analyzing, containing, removing and replacing asbestos-containing products which they claim were placed in certain school buildings between 1939 and 1971." The complaint, containing fifteen counts, demanded judgment against the manufacturers of the asbestos products, U.S. Gypsum, National Gypsum Company, W. R. Grace & Co. (the defendants), and Pfizer, Inc. At the time the question was certified to this Court, the complaint had been reduced to six counts claiming restitution, negligence, breach of express warranties, breach of implied warranties, fraud, and unfair trade practices. By stipulation, Pfizer, Inc., has been dismissed as a party-defendant.

In answer to the complaint, the defendants contended that the cause of action asserted by the plaintiffs was extinguished by Code § 8.01-250.[1] In response, the plaintiffs contended that this statute merely barred the right of action, and that Code § 8.01-250.1 as amended effective April 6, 1986 by Acts 1986, c. 458,[2] revived the right of action and extended the filing deadline to July 1, 1990. By rejoinder, the defendants filed a motion for partial summary judgment, contending that § 8.01-250 vests them with a property interest[3] and that § 8.01-250.1 violates that part of the due process clause of the Constitution of Virginia, which provides

---

[1] In relevant part, Code § 8.01-250 provides as follows:

No action to recover for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of such injury, shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction, or construction of such improvement to real property more than five years after the performance of furnishing of such services and construction.

[2] Code § 8.01-250.1 provides in full:

Notwithstanding the provisions of § 8.01-234 or any other section in this chapter, every action against a manufacturer or supplier of asbestos or material containing asbestos brought by or on behalf of any agency of the Commonwealth incorporated for charitable or educational purposes; counties, cities or towns; or school boards, to recover for (i) removal of asbestos or materials containing asbestos from any building owned or used by such entity, (ii) other measures taken to correct or ameliorate any problem related to asbestos in such building or (iii) reimbursement for such removal, correction or amelioration which would otherwise be barred prior to July 1, 1990, as a result of expiration of the applicable period of limitation, is hereby revived or extended. Any action thereon may be commenced prior to July 1, 1990.

[3] Code § 8.01-250 applies to manufacturers of building materials. *Cape Henry* v. *Natl. Gypsum*, 229 Va. 596, 331 S.E.2d 476 (1985).

that "no person shall be deprived of his . . . property without due process of law".

Finding that the issue framed by the parties "may be determinative in this case" and that it is controlled by the Constitution and laws of this Commonwealth, the federal district court has certified the following question:

> *WHETHER THE APPLICATION OF VA. CODE § 8.01-250.1 TO THE FACTS PRESENTED HERE IS UNCONSTITUTIONAL UNDER THE DUE PROCESS CLAUSE OF ARTICLE I, SECTION 11 OF THE CONSTITUTION OF VIRGINIA.*

In oral argument before this Court, the defendants advocated the affirmative of the question and the plaintiffs the negative. Although the question as certified does not implicate the federal Constitution, the plaintiffs argue that the due process clause of the Fourteenth Amendment and the due process clause of the Virginia Constitution are coextensive and, hence, that decisions of the United States Supreme Court are relevant to determination of the certified question. They cite *Chase Securities Corp.* v. *Donaldson*, 325 U.S. 304, 311 (1945), where the Court said:

> In *Campbell* v. *Holt*, [115 U.S. 620 (1885)], this Court held that . . . a state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, even after right of action is barred thereby, restore to the plaintiff his remedy, and divest the defendant of the statutory bar.

*See also Electrical Workers* v. *Robbins & Myers, Inc.*, 429 U.S. 229, 243-44 (1976).

These decisions support the plaintiffs' view that "statutes of limitation are procedural in nature" and that "there are no vested rights in procedural statutes" for purposes of the Fourteenth Amendment. But the federal decisions are inapposite to our inquiry. Code § 8.01-250 is not a procedural statute.

An ordinary statute of limitations is a procedural statute, one which creates a temporal bar to the maintenance of a legal remedy arising out of an accrued cause of action. Code § 8.01-250 is not a statute of limitations. In *Virginia Military Institute* v. *King*, 217 Va. 751, 758, 232 S.E.2d 895, 899 (1977), the plaintiff

argued that the statutory precursor of Code § 8.01-250 was "the applicable statute of limitations". In response to that argument, we said:

> We do not agree. That statute sets an outside limit within which the applicable statutes of limitation operate. Its purpose is . . . to establish an arbitrary termination date after which no litigation of the type specified may be initiated.

*Id.*

Although "statutes of limitations" and "statutes of repose" are terms sometimes loosely employed as interchangeable, they are, in fact, different in concept, definition, and function. As a general rule, the time limitation in a conventional statute of limitations begins to run when the cause of action accrues. We are of opinion the General Assembly intended Code § 8.01-250 to be a statute of repose. The time limitation in such a statute begins to run from the occurrence of an event unrelated to the accrual of a cause of action, and the expiration of the time extinguishes not only the legal remedy but also all causes of action, including those which may later accrue as well as those already accrued. *Cheswold Vol. Fire Co.* v. *Lambertson Const.*, 489 A.2d 413, 421 (Del. 1985); *see also Restatement (Second) of Torts* § 899, comment g (1979). Conceptually, statutes of repose reflect legislative decisions that "as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability. Thus a 'statute of repose' is intended as a substantive definition of rights as distinguished from a procedural limitation on the remedy used to enforce rights." Stevenson, *Products Liability and the Virginia Statute of Limitations — A Call for the Legislative Rescue Squad*, 16 U. Rich. L. Rev. 323, 334 n.38 (1982). *See generally* McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 Am. U. L. Rev. 579 (1981).

As a statute of repose, Code § 8.01-250 is a redefinition of the substantive rights and obligations of the parties to any litigation "arising out of the defective and unsafe condition of an improvement to real property". Specifically, we think the lapse of the statutory period was meant to extinguish all the rights of a plaintiff, including those which might arise from an injury sustained later, *see Deaconess Home Assn.* v. *Turner Constr.*, 14 Ohio App.

3d 281, 283-84, 470 N.E.2d 950, 954 (1984), and to grant a defendant immunity from liability for all the torts specified in the statute, *see Harris* v. *Clinton Corn Processing Co.,* 360 N.W.2d 812, 816 (Iowa 1985).

The defendants contend that this legislative grant of immunity is a vested right and that they cannot be divested of that right by a statute enacted after the statutory period has expired.[4] It is immaterial to our decision whether this right is characterized as "vested" or as "substantive".

■■■ This Court has consistently held that the due process clause of the Virginia Constitution protects not only rights that have vested, but also substantive property interests which may ripen into vested rights. In *Shiflet* v. *Eller,* 228 Va. 115, 319 S.E.2d 750 (1984), the question on appeal was whether a tort-feasor's potential right to contribution from a joint tort-feasor was entitled to due process protection. We noted that such a right arises at the time damage results from a joint tort and that such a right does not vest until one of the tort-feasors has paid an unfair share of the common obligation. We concluded that the right, although inchoate, is substantive, and we held that " 'substantive' rights, as well as 'vested' rights, are included within those interests protected from retroactive application of statutes", *id.* at 120, 319 S.E.2d at 753, because "[s]uch a retroactive application . . . would violate . . . due process rights and would be invalid", *id.* at 121, 319 S.E.2d at 754.

■ Later, applying the rule in *Shiflet,* we said that "the retroactive application of a statute impairing a 'substantive' right violates due process and is therefore unconstitutional." *Potomac Hospital Corp.* v. *Dillon,* 229 Va. 355, 360, 329 S.E.2d 41, 45, *cert. denied,* 474 U.S. 971 (1985). More recently in *Bartholomew* v. *Bartholomew,* 233 Va. 86, 353 S.E.2d 752 (1987), we held that "the ability of the non-settling tort-feasor to be released when the plaintiff has released another joint wrongdoer", *i.e.,* the right to invoke a defense, is also a substantive right and that the retroac-

---

[4] The defendants insist that, even if Code § 8.01-250 is denominated a statute of limitations, once the period of limitations has expired, the right to assert the defense of the statute is a vested right. Although we recognize the logic of that argument, *see Johnston* v. *Gill,* 68 Va. (27 Gratt.) 587, 595 (1876) (dicta); *Kesterson* v. *Hill,* 101 Va. 739, 45 S.E. 288 (1903); *Strickland* v. *Simpkins,* 221 Va. 730, 734, 273 S.E.2d 539, 541 (1981), we need not decide that question.

tive application of a statute impairing that right was "constitutionally invalid". *Id.* at 91, 353 S.E.2d at 755, 756.

■ Like the rights of those joint tort-feasors (which arose when the tort was committed), the rights bestowed by Code § 8.01-250 upon the defendants in this case (which arose when the statutory period expired) are substantive if not vested and, as such, may not be impaired by retroactive application of Code § 8.01-250.1.

The plaintiffs argue that, even if Code § 8.01-250.1 offends the due process clause, we should hold that it is constitutionally sufficient as an exercise of the police power.

■ The plaintiffs seem to assume that any legislative act which facilitates governmental efforts to reduce a hazard to public health, safety, morals, or general welfare is exempt from constitutional constraints. True, all legislative enactments are entitled to a presumption of constitutionality, but a statute premised upon the police power "is subject to the constitutional guarantee that no property shall be taken without due process of law and where the police power conflicts with the Constitution the latter is supreme". *Board of Supervisors* v. *Carper*, 200 Va. 653, 660, 107 S.E.2d 390, 395 (1959). "[T]he police power is 'elastic'. But its stretch is not infinite. If it were, no property right, indeed, no personal right, could co-exist with it." *Bd. Sup. James City County* v. *Rowe*, 216 Va. 128, 139, 216 S.E.2d 199, 209 (1975); *accord Cupp* v. *Board of Supervisors*, 227 Va. 580, 594-96, 318 S.E.2d 407, 414-15 (1984); *see also Nollan* v. *California Coastal Commission*, 483 U.S. ___, 107 S.Ct. 3141 (1987).

■ We agree that, subject to constitutional guarantees, the legislature's police power includes the power to enact a statute reasonably designed to protect society against the health hazard posed by asbestos products installed in buildings frequented by the public at large. *See Alford* v. *Newport News*, 220 Va. 584, 260 S.E.2d 241 (1979). But Code § 8.01-250.1 is not such a statute.

■ As the plaintiffs say, current Environmental Protection Agency regulations "require school districts to remove asbestos materials prior to any substantial renovation or demolition of a building." Without the benefit of the revival statute, the cost of compliance with these regulations would have to be paid out of the public treasury. It appears, therefore, that the revival statute was designed primarily, not to relieve the hazard to public health, but to relieve budgetary concerns. Such a statute cannot survive

the defendants' due process challenge, and we reject the plaintiffs' police power argument.

On brief, the plaintiffs raise other issues. Specifically, they argue that the fraudulent-concealment count alleged in their complaint seeks equitable relief; that Code § 8.01-250, the statute of repose, does not apply to that count because laches is the only bar to a suit in equity; and, hence, that their complaint was timely filed. Further, they contend that their action at law for fraud was timely filed because, they say, the running of the five-year period specified in the statute of repose is tolled by the alleged fraudulent concealment.

Because both issues are patently outside the compass of the question certified, we will not notice either. Responding definitively to the question before us, we hold that the application of Code § 8.01-250.1 to the facts presented in the orders of certification is unconstitutional under the due process clause of Va. Const. art. I, § 11.

*Certified question answered*
*in the affirmative.*

WHITING, J., dissenting.

## APPENDIX

### Rule 5:42. Certification Procedures

(a) *Power to Answer.* — The Supreme Court may in its discretion answer questions of law certified to it by the Supreme Court of the United States, a United States court of appeals for any circuit, a United States district court, or the highest appellate court of any state or the District of Columbia. Such answer may be furnished, when requested by the certifying court, if a question of Virginia law is determinative in any proceeding pending before the certifying court and it appears there is no controlling precedent on point in the decisions of the Supreme Court or the Court of Appeals of Virginia.

(b) *Method of Invoking.* — This Rule may be invoked only by an order of one of the courts referred to in section (a). No party litigant in the foregoing courts may file in the Supreme Court a petition or motion for certification.

(c) *Contents of Certification Order.* — A certification order shall set forth:

(1) the nature of the controversy in which the question arises;

(2) the question of law to be answered;

(3) a statement of all facts relevant to the question certified;

(4) the names of each of the parties involved;

(5) the names, addresses, and telephone numbers of counsel for each of the parties involved;

(6) a brief statement explaining how the certified question of law is determinative of the proceeding in the certifying court; and

(7) a brief statement setting forth relevant decisions, if any, of the Supreme Court and the Court of Appeals of Virginia and the reasons why such decisions are not controlling.

(d) *Preparation of Certification Order.* — The certification order shall be prepared by the certifying court, signed by the presiding justice or judge, and forwarded to the Supreme Court by the clerk of the certifying court under its official seal. The Supreme Court may require the original or copies of all or of any portion of the record before the certifying court to be filed with the certification order, if, in the opinion of the Supreme Court, the record or portion thereof may be necessary in answering the certified question. The Supreme Court may in its discretion restate any question of law certified or may request from the certifying court addi-

tional clarification with respect to any question certified or with respect to any facts.

(e) *Notification of Acceptance or Rejection.* — The Supreme Court, in its discretion, may decide whether to answer any certified question of law. The Supreme Court will notify the certifying court and counsel for the parties of its decision to accept or to reject any certified question of law. A notice accepting a question will include a briefing schedule and, if oral argument is permitted by the Supreme Court, a tentative date and the length of time allowed for such argument.

(f) *Revocation of Acceptance.* — The Supreme Court, in its discretion, may revoke its decision to answer a certified question of law at any time. Upon deciding to revoke, the Supreme Court will notify the certifying court and counsel for the parties of its action.

(g) *Costs of Certification.* — Fees and costs shall be the same as in civil appeals docketed in the Supreme Court and shall be paid as ordered by the certifying court in its order of certification.

(h) *Briefs.* — The form, length, and time for submission of briefs shall comply with Rules 5:26 through 5:34 *mutatis mutandis.*

(i) *Opinion.* — A written opinion of the Supreme Court stating the law governing each question certified will be rendered as soon as practicable after the submission of briefs and after any oral argument. The opinion will be sent by the clerk under the seal of the Supreme Court to the certifying court and to counsel for the parties and shall be published in the Virginia Reports.

WHITING, J., dissenting.

I do not agree with the majority's conclusion that the General Assembly's adoption of Code § 8.01-250.1, restoring plaintiffs' time-barred claim under Code § 8.01-250, violates Virginia's due process clause as embodied in Article I, Section 11 of our State Constitution.

The majority decision is based upon the premise that, "Code § 8.01-250 is not a statute of limitations [but rather] a statute of repose . . . intended as a substantive definition of rights as distinguished from a procedural limitation on the remedy used to enforce rights." Noting that "time limitation in such a statute begins to run from the occurrence of an event unrelated to the accrual of a cause of action," the majority concludes that, "the expiration of the time extinguishes not only the legal remedy but also all causes of action, including those which may later accrue as well as those already accrued."

I do not believe the legislative designation of when a limitation period begins to run should determine whether the General Assembly intended the statute to be substantive or procedural. Such a distinction has no basis in the history of statutes of limitation nor in logic.

Early English statutes of limitation began to run on arbitrary dates without regard to when a particular cause of action arose. For example in 1237 a statute was enacted prohibiting all real property actions based on a seisin prior to the arbitrary date of the coronation of Henry II. *See* 2 Pollock & Maitland, *The History of English Law*, at 81 (2d ed. 1898). Almost 400 years later, Parliament synchronized the running of statutes of limitation with the accrual of particular causes of action. An act for limitation of actions and for avoiding of suits in law, 1623, 21 Jac. I Ch. 16.

The premise that Code § 8.01-250 is not a statute of limitation but a "statute of repose" and, therefore, affects substantive rights has two flaws. First, before this decision we have always considered statutes of limitation which bar common law actions to be statutes of repose affecting only procedural rights. *Hawks v. DeHart*, 206 Va. 810, 813, 146 S.E.2d 187, 189 (1966); *Richmond Redevelopment & Housing Authority v. Laburnum Construction Corp.*, 195 Va. 827, 839, 80 S.E.2d 574, 581 (1954); *Page v. Shenandoah*, 185 Va. 919, 924, 40 S.E.2d 922, 925 (1947); *Street v. Consumer Mining Corp.*, 185 Va. 561, 575, 39 S.E.2d 271, 277

(1946). Thus, creating a special "statute of repose" which affects substantive rights seems to me to be a judicial fiat. Second, the General Assembly's choice of the date at which the limitation period begins to run cannot logically convert it into a statute barring not only the remedy but the right as well.

As recently as 1984 we have reiterated the rules for determining the validity of a legislative act:

> Every presumption is made in favor of the constitutionality of an act of the legislature. A reasonable doubt as to its constitutionality must be solved in favor of the validity of the law, and the courts have nothing to do with the question whether or not the legislation is wise and proper, as the legislature has plenary power, except where the Constitution of the State or of the United States forbids, and it is only in cases where the statute in question is plainly repugnant to some provisions of the Constitution that the courts can declare it to be null and void.

*City of Charlottesville* v. *DeHaan*, 228 Va. 578, 584, 323 S.E.2d 131, 133 (1984), *quoting Ex parte Settle*, 114 Va. 715, 719, 77 S.E. 496, 497 (1913). Thus, if two constructions of a statute are possible, we should avoid the construction which makes the statute unconstitutional. *Carpel* v. *City of Richmond*, 162 Va. 833, 840, 175 S.E. 316, 318 (1934); *A.S. White & Co.* v. *Jordan*, 124 Va. 465, 470, 98 S.E. 24, 26 (1919).

The controlling consideration is legislative intent. What rights did the General Assembly intend to affect in adopting Code § 8.01-250? While not dispositive, it is noteworthy that this statute was placed in Chapter 4 of § 8.01 of our Code, entitled "Limitations of Actions."

The legislation, adopted March 31, 1964, described the statute as "[a]n Act to amend the Code of Virginia by adding a section numbered 8-24.2, to *limit the time* within which certain actions for damages arising out of the defective and unsafe condition of improvements to real property may be brought." Acts 1964, c. 333 (emphasis added). Significantly the statute's second paragraph provides, "*The limitation* prescribed in this section shall not apply [to certain listed parties] . . . ." Code § 8.01-250 (emphasis added). There is no language in the statute in question by

which one might infer that the General Assembly intended to bar not only the right of action but the remedy as well.

The provision in Code § 8.01-250 that reads, "[no] action to recover . . . shall be brought" resembles the language in many of our other statutes of limitation.[1] The time limitation in these statutes does begin to run when the cause of action accrues. However, each has essentially the same prohibition against filing an action contained in Code § 8.01-250.

Moreover, the General Assembly has expressly said that "[n]o statutory limitation period shall have jurisdictional effects . . . ." Code § 8.01-235. This indicates a legislative intent that *all* statutes of limitation, whether "conventional" or of the newly coined "repose" variety, are procedural and not substantive.

I believe the majority has shifted statutes of repose from the category of statutes of limitation to the category of nonclaim statutes. As the Supreme Court of Washington pointed out in *Lane* v. *Department of Labor and Industries*, 21 Wash. 2d 420, 425, 151 P.2d 440, 443 (1944):

> There are two types of statutes which the courts had to apply. One of them is the statute which either by its plain terms or by the construction given it by the court makes the limitation of time inhere in the right or obligation rather than the remedy. It is sometimes referred to as a statute of nonclaim, and, strictly speaking is not a statute of limitations at all. In its usual form the statute creates some right or obligation and a time is fixed within which the right must be asserted or the obligation sought to be enforced, or the same will be barred. When the limitation period expires, the right

---

[1] *See* Code § 8.01-239 ("No action shall be brought for the recovery of any ground rent . . ."); Code § 8.01-240 ("No suit shall be brought to enforce the lien of any water . . . assessment"); Code § 8.01-241 ("No deed of trust . . . shall be enforced . . ."); Code § 8.01-245 A ("No action shall be brought upon the bond of any fiduciary . . ."; Code § 8.01-247 ("No action shall be maintained on any contract which is governed by the law of another state or country if the right of action thereon is barred either by the laws of such state or country or of this Commonwealth."); Code § 8.01-251 ("[N]o action [shall be] brought on a judgment . . . after twenty years from the date of such judgment"); Code § 8.01-253 ("No [voluntary] gift . . . shall be avoided . . . unless within five years from its recordation . . . suit be brought for that purpose . . . ."); Code § 8.01-254 ("[N]o suit or action shall be brought to subject . . . real estate to the payment of [a charge on devised real estate] after twenty years . . ."); Code § 8.01-255.1 ("No person shall commence an action for the recovery of lands . . . [for] breach of a condition subsequent . . . .")

or obligation is extinguished and cannot be revived by a subsequent statute enlarging the time limitation. Illustrations of nonclaim statutes in this state are those providing for liens of laborers and materialmen, claims against estates of deceased persons, and claims for damages against municipal corporations.

We have examples of similar nonclaim statutes in Code § 8.01-222 providing for notice of claim of damages for negligence against municipal corporations and in Code § 43-17 requiring the filing of the memorandum of lien within six months of the filing of the suit to perfect that lien. Note that each of these statutes *creates* a new right and places a limitation on the time for enforcing it. In contrast, Code § 8.01-250 imposes a time limitation on a common law right.

In *Bellevue School Dist. 405* v. *Brazier Construction Co.*, 103 Wash. 2d 111, 691 P.2d 178 (1984), the Washington Supreme Court considered whether a statute[2] similar to Code § 8.01-250 affected the cause of action as well as the remedy. The Washington court, quoting *Lane*, 21 Wash. 2d at 426, 151 P.2d at 443, distinguished its statute from a nonclaim statute in the following language:

> The other type of statute is one which relates only to the remedy and has nothing to do with any right or obligation, does not inhere in either, and is wholly independent of them. It is a statute of limitations in its strict sense, and although a remedy may become barred thereunder, the right or obligation is not extinguished. It is a statute of repose.

*Id.* at 118, 691 P.2d at 183. The Washington court did not construe the statute as barring the right as well as the remedy even

---

[2] Wash. Rev. Code Ann. § 4.16.310 (1967) provides:
  All claims or causes of action as set forth in RCW 4.16.300 shall accrue, and the applicable statute of limitation shall begin to run only during the period within six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later . . . . Any cause of action which has not accrued within six years after such substantial completion of construction, or within six years after such termination of services, whichever is later, shall be barred: *Provided,* That this limitation shall not be asserted as a defense by any owner, tenant or other person in possession and control of the improvement at the time such cause of action accrues.

though its limitation period did not begin to run on the date the cause of action accrued. As the court pointed out:

> The builder limitation statute, RCW 4.16.310, creates no new right, but merely defines a limitation period within which a claim ordinarily must accrue. Even without this statute, a common law right would still exist. [Citation omitted.]
>
> The essential difference between RCW 4.16.310 and an ordinary statute of limitation is simply the point at which the limitation period begins to run. Builder statutes such as RCW 4.16.310 arbitrarily define this point as the date of substantial completion of the construction project. Under conventional statutes of limitation, the period begins to run when the cause of action accrues. *See* RCW 4.16.010. Under RCW 4.16.310, the accrual period is defined by statute to exist for a period limited to 6 years from the date of substantial completion. The discovery rule, if applicable, for accrual of actions is limited to the 6-year period.
>
> The fact that actions which fall within RCW 4.16.310 may also be subject to other periods of limitation does not transform this limitations statute into a nonclaim provision. With the recognition that under some circumstances causes of action for negligence or professional malpractice may not arise until discovery, the Legislature has responded by enacting statutes of limitations which require suit be filed within the shorter of two periods, one measured from the date of discovery and a second, longer period measured from the event giving rise to the cause of action. *See, e.g.,* RCW 4.16.350 (actions against health care providers). RCW 4.16.310 enacts such a two-step procedure: actions founded upon negligence or professional malpractice concerning improvements to real property must be filed within 2 or 3 years of discovery, depending on the type of action but, in any case, discovery must occur within 6 years of substantial completion of the improvement. This statute simply restricts the judicially created discovery rule with a 6-year overall bar.

*Id.* at 118-19, 691 P.2d at 183-84.

We have not previously treated Code § 8.01-250 as a substantive or nonclaim statute. In *Cape Henry Towers, Inc.* v. *National*

*Gypsum Co.*, 229 Va. 596, 331 S.E.2d 476 (1985), we described it as "the five-year statute of limitations provided by Code § 8.01-250," *id.* at 598, 331 S.E.2d at 477, comparing it, by inference, to "[t]he traditional statutes of limitations". *Id.* at 601 n.4, 331 S.E.2d at 480 n.4. In *Virginia Military Institute* v. *King*, 217 Va. 751, 232 S.E.2d 895 (1977), we described it as "that statute [which] sets an outside limit within which the applicable statutes of limitations operate. Its purpose is not to extend existing limitation periods, such as the two-year period applicable to personal injury actions, but to establish an arbitrary termination date after which no litigation of the type specified may be initiated." *Id.* at 758, 232 S.E.2d at 899.

Since I believe that Code § 8.01-250 is a statute of limitation or repose and not a nonclaim statute, I must consider whether a legislature has the constitutional power to revive a time-barred right of action. The courts have disagreed on this issue for a number of years.

The Supreme Court of the United States in an early case, *Campbell* v. *Holt*, 115 U.S. 620 (1885), decided that the Fourteenth Amendment to the United States Constitution[3] did not prohibit a legislative revival of a time-barred action. The *Campbell* Court reasoned that the statute of limitation only barred the remedy or right of action but not the cause of action. The dissent in *Campbell* characterized the right to plead the statute of limitation as a remedy, but said the deprivation of a remedy was equivalent to a deprivation of a right which the remedy was intended to vindicate. As such, the dissent found it to be a vested right which the Fourteenth Amendment to the Constitution was intended to protect. The dissent quotes Cooley, *Constitutional Limitations*, at 429-30 (3d ed. 1874), in support of its conclusion that the right to plead a statute of limitation once it has run is a vested right:

> Regarding the circumstances under which a man may be said to have a vested right to a defence against a demand made by another, it is somewhat difficult to lay down a comprehensive rule which the authorities will justify. It is certain that he who has satisfied a demand cannot have it revived

---

[3] The operative provisions of our due process clause and that of the Federal Constitution are the same. However, I agree that a United States Supreme Court interpretation of the federal due process clause does not inhibit our independent interpretation of Virginia's due process clause.

against him, and he who has become released from a demand by the operation of the statute of limitations is equally protected. In both cases the demand is gone, and to restore it would be to create a new contract for the parties-a thing quite beyond the power of the legislature.

*Id.* at 633-34.

A number of states adopting the dissent's view referred to that quotation from Cooley. Cooley erroneously assumes that all parties impliedly contract for a continuation of any defense the law provides at the time of the making of any contract or the commission of any tort. Our previous holdings indicate that we should not adopt such a rationale.

In *Bain* v. *Boykin*, 180 Va. 259, 23 S.E.2d 127 (1942), we deprived a defendant of his defense that the plaintiff had failed to register under the fictitious name statute in effect at the time the parties entered into the contract. The amendment came long after the contract had been performed and, in fact, while the case was on appeal before this Court. The defendant pitched his argument on a claim of a vested right in the judgment, but we decided that even though the Act was retroactive he had no vested right in the judgment. *Id.* at 264, 23 S.E.2d at 129-30. Implicit in our holding is a finding that a defendant has no vested or substantive right in any statutory defense. By similar reasoning I fail to see how these defendants have a vested or substantive right in a statute of limitation which had run prior to the revival of the present right of action.

As Justice Jackson pointed out in *Chase Securities Corp.* v. *Donaldson*, 325 U.S. 304 (1945):

Statutes of limitations find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. (Citation omitted.) They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public pol-

icy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.

This Court, in *Campbell* v. *Holt*, adopted as a working hypothesis, as a matter of constitutional law, the view that statutes of limitations go to matters of remedy, not to destruction of fundamental rights. The abstract logic of the distinction between substantive rights and remedial or procedural rights may not be clear-cut, but it has been found a workable concept to point up the real and valid difference between rules in which stability is of prime importance and those in which flexibility is a more important value.

. . . .

The Fourteenth Amendment does not make an act of state legislation void merely because it has some retrospective operation. What it does forbid is taking of life, liberty or property without due process of law. Some rules of law probably could not be changed retroactively without hardship and oppression, and this whether wise or unwise in their origin. Assuming that statutes of limitation, like other types of legislation, could be so manipulated that their retroactive effects would offend the Constitution, certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is *per se* an offense against the Fourteenth Amendment.

*Id.* at 314-16.

The various state cases which have dealt with this issue are in disarray. *See Chevron Chemical Co.* v. *Superior. Ct.*, 131 Ariz. 431, 438-40, 641 P.2d 1275, 1283-84 (1982); *Gilbert* v. *Selleck*, 93 Conn. 412, 418-19, 106 A. 439, 440-41 (1919); *Roe* v. *Doe*, 59 Haw. 259, 266-69, 581 P.2d 310, 316-17 (1978); *Canton Textile Mills, Inc.* v. *Lathem*, 253 Ga. 102, 104-05, 317 S.E.2d 189, 192, *cert. denied*, 469 U.S. 918 (1984); *Aaron* v. *City of Tipton*, 218 Ind. 227, 238-40, 32 N.E.2d 88, 92-93 (1941); *Pryber* v. *Marriott*

*Corp.*, 98 Mich. App. 50, 56, 296 N.W.2d 597, 600 (1980), *aff'd*, 411 Mich. 887, 307 N.W.2d 333 (1981); *Donaldson v. Chase Securities Corp.*, 216 Minn. 269, 275-77, 13 N.W.2d 1, 4-5 (1943), *aff'd*, 325 U.S. 304 (1945); *Crist v. Town of Gallup*, 51 N.M. 286, 293, 183 P.2d 156, 160 (1947); In *Interest of W.M.V.*, 268 N.W.2d 781, 786 (N.D. 1978); *Vigil v. Tafoya*, 600 P.2d 721, 724-25 (Wyo. 1979) (legislative revival of time-barred right of action does not violate state due process); *cf. Gallewski v. H. Hentz & Co.*, 301 N.Y. 164, 174, 93 N.E.2d 620, 624 (1950); *Pnakovich v. SWCC*, 163 W.Va. 583, 589-90, 259 S.E.2d 127, 130-31 (1979) (legislative revival of time-barred right of action does not *per se* violate due process, ad hoc determination weighing fairness to the parties). *But see Wasson v. State ex rel. Jackson*, 187 Ark. 537, 538, 60 S.W.2d 1020, 1020-21 (1933); *Cheswold Volunteer Fire Co.*, 489 A.2d 413, 418 (Del. 1984); *Mazda Motors of America, Inc. v. S.C. Henderson & Sons, Inc.*, 364 So.2d 107, 108 (Fla. Dist. Ct. App. 1978), *cert. denied*, 378 So.2d 348 (1979); Wilson v. *All-Steel, Inc.*, 87 Ill. 2d 28, 40-42, 428 N.E.2d 489, 494-95 (1981); *Jackson v. American Best Freight System, Inc.*, 238 Kan. 322, 324-25, 709 P.2d 983, 985 (1985); *Jackson v. Evans*, 284 Ky. 748, 751-52, 145 S.W.2d 1061, 1062 (1940); *Ayo v. Control Insulation Corp.*, 477 So.2d 1258, 1260 (La. Ct. App. 1985),*cert. denied*, 481 So.2d 1349 (1986); *Dobson v. Quinn Freight Lines, Inc.*, 415 A.2d 814, 816 (Me. 1980); *Zitomer v. Slate*, 21 Md. App. 709, 714, 321 A.2d 328, 331 (1974), *rev'd on other grounds*, 275 Md. 534, 341 A.2d 789 (1975), *cert. denied sub nom., Gasperich v. Church*, 423 U.S. 1076 (1976); *Williams v. Wellman-Power Gas, Inc.*, 174 Mont. 387, 391, 571 P.2d 90, 92-93 (1977); *Colony Hill Condominium I Ass'n v. Colony Co.*, 70 N.C. App. 390, 394, 320 S.E.2d 273, 276 (1984), *review denied*, 312 N.C. 796, 325 S.E.2d 485 (1985); *Grand Island School District No. 2 v. Celotex Corp.*, 203 Neb. 559, 563, 279 N.W.2d 603, 607 (1979); *Cathey v. Weaver*, 111 Tex. 515, 527, 242 S.W. 447, 453 (1922); *In re Swan's Estate*, 95 Utah 408, 415, 79 P.2d 999, 1002 (1938); *Haase v. Sawicki*, 20 Wis. 2d 308, 311-13, 121 N.W.2d 876, 878-79 (1963) (expiration of limitation period vests party with right which is entitled to due process protection); *cf. Tyson v. Johns-Manville Sales Corp.*, 399 So.2d 263, 270 (Ala. 1981); *Jefferson County Dept. of Social Services v. D.A.G.*, 199 Colo. 315, 317-18, 607 P.2d 1004, 1006 (1980); *Uber v. Missouri Pacific R.R. Co.*, 441 S.W.2d 682, 687 (Mo. 1969); *Gould v. Concord*

*Hospital*, 126 N.H. 405, 408, 493 A.2d 1193, 1195-96 (1985); *Wright* v. *Keiser*, 568 P.2d 1262, 1267 (Okla. 1977); *Ford Motor Co.* v. *Moulton*, 511 S.W.2d 690, 695 (Tenn.) *cert. denied*, 419 U.S. 870 (1974), *called into doubt by, Clay* v. *Johns-Manville Sales Corp.*, 722 F.2d 1289 (6th Cir. 1983), *cert. denied sub nom.*, *Raymark Industries, Inc.* v. *Clay*, 467 U.S. 1253 (1984) (legislative revival of time-barred right of action unconstitutional under state constitution's specific prohibition against retrospective laws). At least one state that adopted the dissenting view of *Campbell* v. *Holt* has since repudiated its earlier decision and found that the legislature does have the constitutional power to revive "dead" rights of action previously barred by the statutes of limitation. *Canton Textile Mills, Inc.*, 253 Ga. at 104-05, 317 S.E.2d at 192; *cf. Krenzlak* v. *Krenzlak*, 469 A.2d 987, 991-93 (Pa. 1983).

We have never directly addressed this issue. *Bartholomew* v. *Bartholomew*, 233 Va. 86, 353 S.E.2d 752 (1987), cited in the majority opinion, involved a different situation. In *Bartholomew*, we held unconstitutional the retroactive application of a statute abolishing the common law defense that a release of one joint tortfeasor released the remaining tortfeasors. First, in *Bartholomew* the defense was one existing at common law; the defense here is a matter of legislative grace which may be granted or taken away by the General Assembly. Second, the right of action in *Bartholomew* was lost by the activity of the plaintiff in releasing the tortfeasor. In contrast, the General Assembly, as a matter of grace, gave the defendants a defense of the statute of limitation but later extended the period of limitation.

A careful reading of the case of *Cheswold Volunteer Fire Co.* v. *Lambertson Construction Co.*, 489 A.2d 413 (Del. 1984) reveals the effect of the majority opinion. *Cheswold* held that a builder's repose statute of limitation similar to the one at bar need not be pleaded as an affirmative defense.[4] 489 A.2d at 421. *Cheswold* also held the statute "may not be waived because the time limit expressly qualifies the right which the statute creates . . . . Moreover, because the statute of repose is a substantive provision, it relates to the jurisdiction of the court; hence 'any failure to commence the action within the applicable time period extinguishes

---

[4] The General Assembly has evidenced a contrary intent in Code § 8.01-235, "The objection that an action is not commenced within the limitation period prescribed by law can only be raised as an affirmative defense specifically set forth in a responsive pleading."

the right itself and divests the . . . court of any subject matter jurisdiction which it might otherwise have.' " (Citations omitted). *Id.*

I conclude that the General Assembly did not intend to abolish the common law cause of action described in Code § 8.01-250 but only to bar the procedural right of action. I also find that the General Assembly had the constitutional power to revive the previously barred right of action described in Code § 8.01-250.

Therefore, I would respond to the question before me by holding the application of Code § 8.01-250.1 to the facts presented in the orders of certification is constitutional under the due process clause of Va. Const. art. I, § 11.